Lynch v. Donnell.

LYNCH v. DONNELL, *Appellant.*[*]

DIVISION ONE.

1. **Tax Sales: NOTICE: CITY CHARTER.** Where a city charter requires the collector to post written notices of tax sales, he may do so by his deputy.

2. ———: ———: ———. The certificate of the collector need not show that the notice of sale remained posted up for three weeks, under a provision of the charter requiring the collector to file with the auditor a certificate that the notice "had been posted in the four most public places in the city, at least three weeks before the sale."

[*] The cases of Long *v.* Donnell and Long *v.* Young were by agreement reversed and bills dismissed, upon the authority of the above entitled cause.

3. ——— : ——— : ———. The "four most public places in the city," at which the notices were required to be published, were matters for the judgment of the collector, and this is true, although the city council had passed an ordinance on the subject.

4. ——— : ADJOURNMENT : THANKSGIVING DAY. A provision in the city charter directing the collector " to continue the sale from day to day between the hours of ten o'clock and five o'clock in the afternoon, as long as there are bidders, or until the taxes are paid," does not prevent the collector from adjourning the sale over Thanksgiving day.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED.

*W. C. Stewart* for appellant.

(1) The court erred in holding that the notice of sale was not duly and legally given. (2) The court erred in holding that the collector did not file in the office of the city auditor a copy of the notice of sale with his certificate indorsed thereon, setting forth that notice had been posted up in the four most public places in the City of Kansas, at least three weeks before the day of sale. (3) The court erred in holding that the collector did not hold the sale from day to day from the first day, November 6, to and including the eighth day of December, 1882, the day of the sale of the property in question. (4) The court erred in concluding that the collector omitted to hold the sale on the thirtieth day of November, 1882, and that said day was Thanksgiving day, and that such omission deprived him of the power to make any sale thereafter. (5) The court erred in finding the issues for the respondent when they should have been found for the appellant.

*C. O. Tichenor* for respondent.

(1) The evidence shows that the notices were not posted in the "four most public places in the city."

*Ruly v. Huntsman,* 34 Mo. 501. ( 2 ) The places were not selected by the collector, but by the common council. This was a duty which neither the collector could delegate nor the council usurp. *Langdon v. Poor,* 20 Vt. 13 ; *Powers' Appeal,* 29 Mich. 508. ( 3 ) The certificate of the collector was insufficient, for it referred to the single act "of posting up." It should show that the notices continued up for three weeks. *Tidd v. Smith,* 3 N. H. 178 ; *Bussey v. Leavitt,* 12 Me. 378 ; *Pennell v. Morrow,* 30 Ark. 661 ; *Abbott v. Doling,* 49 Mo. 304 ; *Spurlock v. Dougherty,* 81 Mo. 182 ; Cooley on Taxation [ 1 Ed.] 334 ; *Ramsay v. Howard,* 68 Wis. 12 ; *Morris v. Carmichael,* 68 Wis. 133 ; *Yankee v. Thompson,* 51 Mo. 239 ; *Moore v. Harris,* 91 Mo. 611 ; *Spurlock v. Allen,* 49 Mo. 180 ; *Nelson v. Pierce,* 6 N. H. 194. ( 4 ) Plaintiff has shown that the posting was not as required by the charter. He need not have done so, as the certificate was defective. Being defective, it was "past all surgery." There would be no safety as to titles if this were not so. The record must show what was done. It cannot be corrected or changed. *Duff v. Nelson,* 90 Mo. 97 ; *Iverslie v. Spaulding,* 32 Wis. 394 ; *Lessee v. McLaughlin,* 8 Ohio, 114 ; *Jarvis v. Silliman,* 21 Wis. 600 ; *People v. Commissioners,* 14 Mich. 531. ( 5 ) The collector could not, under the charter, adjourn the sale over Thanksgiving day. *Sullivan v. Donnell,* 90 Mo. 283 ; *State v. Ambs,* 20 Mo. 216 ; *Moore v. Hagan,* 2 Duval, 439.

BRACE, J.—This is an action to set aside a tax deed from the city collector of Kansas City to the defendant for a lot in said city, as being a cloud upon plaintiff's title thereto. The court found for the plaintiff, and the defendant appeals from the judgment rendered on such finding.

The plaintiff concedes that the tax deed is valid upon its face, but claims that the tax sale is void for the following reasons: "*First.* The notices of sale

were not posted up in the four most public places in Kansas City. *Second.* The places were not selected by the collector, but by the council. *Third.* The notices were not posted by the collector. *Fourth.* The certificate and affidavit in reference to said notice were prematurely made and filed, and the certificate is not in the form required by the charter. *Fifth.* The sale was not continued from day to day. No sale having been made on Thursday, November 30, because it was Thanksgiving day."

The charter provisions by which the questions raised must be ruled are as follows (Session Acts, 1875, art. 6, pp. 231, 232):

"Sec. 43. The notice to be given of the sale of real property for delinquent taxes shall state the time and place thereof, and contain a description substantially the same as in the land tax book, of the several parcels of real property to be sold, and all delinquent taxes and assessments thereon, and such real property as has not been advertised and sold for the taxes of any previous year or years, and on which taxes or special assessments remain due and delinquent, and the amount of the taxes and special assessments, interests and cost against each parcel of real property.

"Sec. 44. The city collector shall give the notice required in the last preceding section, by causing the same to be published once in each week for three successive weeks, in some newspaper published in the City of Kansas, the last publication to be at least one day before the day of sale. The city collector shall charge and collect, in addition to the taxes and interest, a sum not exceeding ten cents, on each tract of real property advertised for sale, or any sum not exceeding said amount, as may be provided by ordinance of the City of Kansas. And if the city collector cannot procure the publication of said notice for the sum herein specified, or as may be provided by ordinance as aforesaid, or if from any reason the city collector is unable to

procure the publication of said notice, he shall post up written notices of said sale in the four most public places in the City of Kansas, at least three weeks before (the) sale; and notice so given shall have the same force and effect as though the same had been published in a newspaper. In that case he shall, before making the sale, file in the office of the city auditor a copy of said notice, with his certificate indorsed thereon, setting forth that said notice had been posted up in the four most public places in the City of Kansas, at least three weeks before the sale, which said certificate shall be subscribed by him and sworn to before some person authorized to administer oaths. The city collector shall obtain a copy of said advertisement, together with a certificate of the due publication thereof, from the printer or publisher, or business manager of the newspaper in which the same shall have been published, and shall file the same in the office of the city auditor, and such certificate shall be substantially in the form that may be prescribed by ordinance of the City of Kansas, or by the comptroller.

"Sec. 45. The city collector shall, at his office in the City of Kansas, on the day of sale, at the hour of ten o'clock in the forenoon, offer for sale, separately, each tract or parcel of real property advertised for sale, on which the taxes, interest and costs, or special assessments have not been paid, and shall continue the sale from day to day, between the hours of ten o'clock in the forenoon and five o'clock in the afternoon, as long as there are bidders, or until the taxes are all paid."

By an ordinance of the city approved, August 21, 1877, it was ordained :

"Sec. 1. That the charges allowed for publishing the notice to be given by the city collector of the sale of real estate for delinquent taxes as is prescribed by sections 43 and 44 of article 6 of the charter shall not exceed ten cents on each tract of real property advertised for sale, for the entire years of delinquency.

"Sec. 2. In case the city collector cannot procure the publication of said notice by any newspaper published in the City of Kansas he shall put up written notices of said sale in the four most public places in the City of Kansas at least three weeks before the sale and the common council hereby determine that the four most public places in the city of Kansas are, to-wit: The old city courthouse on the corner of Fourth and Main street; the postoffice corner of Main and Seventh street; at number 1433, Grand Avenue, near the northeast corner of Grand Avenue and Fifteenth street; one, the Leland Hotel, Union Avenue, West Kansas City. * * *."

On the fourteenth of October, 1882, the collector filed in the office of the city auditor a copy of the notice of sale for delinquent taxes given in this case, said notice conforming to the requirements of section 43 of the charter together with his certificate thereon, setting forth that being unable to procure the publication of said notice in any newspaper published in the City of Kansas for a sum not exceeding ten cents per tract, that he posted up written notices of the sale of which the one filed is a true copy "in the four most public places in the City of Kansas at least three weeks before the sale and before the first Monday of November, A. D. 1882, which public places were and are the following," naming the same places specified in the ordinance.

By the notice the sales were to begin on the first Monday in November, and the sale of the lot in question was made on the eighth of December, 1882.

I. It will be observed that section 44 makes it the duty of the city collector to give the notice required by section 43 of the sale of real property for delinquent taxes. There is nothing in the terms of the law implying that the mere physical act of posting up the notices must be performed in person by the collector; there is nothing in the nature of the act to be performed requiring skill or which could be supposed to involve the idea

Lynch v. Donnell.

of personal or official trust or confidence; that they were put up as stated in the certificate; and that the collector caused them to be put up by his deputy employed for that purpose is not questioned, and it cannot be seen why the maxim *qui facit per alium, facit per se* should not apply to this point.

II.  There can be no question that under the charter it was the privilege of the collector to select the four most public places at which the notices were to be posted, and that he could not be and was not deprived of that power by the ordinance cited. His certificate shows that *he* posted them at the places therein mentioned; the oral evidence that he caused them to be so posted; these places were selected by him as the four most public places. The fact that such an ordinance had been passed may and doubtless did have its influence in leading him to the conclusion that the places selected were the four most public places; so may have other considerations and suggestions; nevertheless, he selected these places, caused the notices to be placed there, and so returned the fact in his certificate. The important inquiry is, were such the places contemplated in the charters? It is the act of the collector, the time and manner in which he did it, that affects the interest of the delinquent owner, not the considerations which led him to the conclusion to so do it.

III.  In answer to the fourth point of counsel it may be first said that the charter does not prescribe a form in which the certificate of the collector is required to be made, and no ordinance was introduced prescribing such form. The only provision in regard to the time when it shall be filed is that it must be filed before making the sale. The certificate was filed on the fourteenth of October, 1882; the sale commenced on the sixth of November thereafter, and complied with the law in this particular, by not only showing that the certificate was filed before the sale, but that the notices

were posted at least three weeks before the sale. Section 44, *supra*, prescribes what the certificate shall contain, *i. e.*, it must set forth, that the written notice required by that section "*had been posted up* in the four most public places in the City of Kansas at least three weeks before the sale," and the real point of contention as developed in the argument of counsel seems to be that this requirement is not met by the certificate filed in this instance in which the collector says he *posted up* the written notice of the sale in the four most public places in the City of Kansas at least three weeks before the sale.

Counsel for plaintiff contend that by the form of expression used in the charter the collector is required to certify in effect not only that he posted up the notices three weeks before the sale, but that such notices remained so posted up during the whole of that period of time; if the law does in effect require such a certificate, then of course it was the duty of the collector after putting up the notices to maintain them posted for three weeks in order that he might truthfully so certify. Color for such a construction can only be found by wrenching from its connection that part of section 44 treating of the certificate, and treating it as a separate and independent provision. That the law does not require a certificate expressive of this idea is obvious when that part of section 44 is read in connection with the preceding part of the same paragraph prescribing the duty of the collector in regard to posting notice.

He is first required, in the contingency therein stated, to "post up written notices of said sale in the four most public places in the City of Kansas at least three weeks before the sale," and this is the whole of his duty in this behalf; having performed that duty he is then in the next sentence required to certify that he had performed that duty, *i. e.*, that the notices had been posted up as required; having discharged his whole duty by

posting them, a construction that would require a certificate that he did something more, something that the law did not require him to do, must be faulty. Such a construction is unreasonable from other considerations ; in order that he might make such a certificate truthfully and conscientiously, he would have to keep ward and watch over these notices continuously from the time they were posted during the entire period of three weeks. The law makes no such unreasonable requirement ; there is no necessity for it ; when the notices are once posted, provision is made by the penal laws of the state for their protection, and for keeping them posted intact. R. S. 1879, sec. 1583.

IV. To sustain the first point made against the sale, the plaintiff introduced the evidence of two witnesses tending to prove that certain other places in Kansas City were more public than "1433 Grand Avenue near the northeast corner of Grand Avenue and Fifteenth street," where one of the notices of sale was posted, and counsel contend that, in posting one of the notices at that point, the collector failed to comply with that provision of the charter requiring him to "post up written notices of said sale in the four most public places in the City of Kansas." No question is raised as to the three other places. The points designated by these witnesses are in the immediate vicinity of either one or the other of two of the places ( the old courthouse and postoffice ) at which notices were posted. The phraseology of the charter, in this regard, is a little peculiar ; "four of the most public places" is the form most commonly used in these enactments. The meaning and purpose is, however, the same ; the object of all these enactments is to give notice to as many people as possible who may be interested in such sale, either as owners, taxpayers or possible purchasers.

The people to be reached by these notices were distributed all over the city, in its suburbs and in the surrounding country. Kansas City, in 1882, like most other

Lynch v. Donnell.

growing western cities, it seems, was not a compact mass having a common social and business center, to which all of its citizens habitually resorted, but consisted rather of a number of associated communities, each having in itself, to some extent, a separate social and business life.    The evidence shows that the neighborhood around 1433 Grand Avenue was an important and populous one of these divisions having such a separate life. It is not disputed that the point at which the notice in question was posted was the most public in that part of the city.    The law provided for only four notices with which to notify the whole city.    Two were posted in the neighborhood of, and in convenient proximity to, the places named by the witnesses; to post another at one of the places named by the witnesses would have been to merely duplicate the notice for those citizens residing or doing business in, or resorting to, that part of the city, and to deprive a large number of citizens, residing and doing business in another part of the city, of convenient access to such notice.    This, while it might be a compliance with the letter, would be to ignore the spirit, and defeat the very object sought to be accomplished by the law.

The law left the selection of the four most public places, at which the notices are to be posted, to the judgment of the collector.    He has, in this instance, exercised it wisely, in accordance with the true spirit and meaning of the law, and in a manner best calculated to secure its object; this becomes more palpable when it is remembered that, by the ordinance before referred to (published five years before) the places where the four notices were posted were the places designated as the most public, and that it had been the custom in previous years to post the notices at these places; hence, they were posted at the very places where the citizens generally would expect to find them.    To make a change, under such circumstances, would be a matter for grave consideration, and

ought to have had the support of good cause. Although the ordinance was not binding on the collector, its observance, until it became custom, was a fact not to be disregarded in determining the four most public places for such notices.

V. The plaintiff introduced evidence tending to prove that no sales were made on the thirtieth of November, 1882, which was Thanksgiving day, and contend that the sale made to defendant on the eighth of December, following, and the deed executed in pursuance thereof are void for that reason; because, after commencing the sale in conformity to law and the notices given, the charter requires that he "shall continue the sale from day to day between the hours of ten o'clock in the forenoon and five o'clock in the afternoon as long as there are bidders, or until the taxes are all paid." Sec. 45, *supra*. This is a direction to the collector. The expression "from day to day" in this clause of the section cannot be construed that he must in all instances continue the sale from a day precedent to the next succeeding day; if so, to comply with its terms would require sales to be made on Sunday, a construction that no one would contend for. Tax laws, like all other laws, are to be construed reasonably and with reference to the usages and customs of the country and the general law of the land. For nearly thirty years Thanksgiving day, as proclaimed by the governor, has been observed as a holiday by the people of the state; so firmly had its observance become imbedded in the customs of our people that it was finally declared by statute to be a public holiday. R. S. 1879, sec. 551.

And, that its character as such might not be mistaken, the same section provided, that for all purposes whatever as regards the presentment for payment or acceptance, and of presenting and giving notice of dishonor of commercial paper, such holiday "shall be treated and considered the same as the first day of the week commonly called Sunday," and the legislature

VOL. 104—34

emphasized their appreciation of its character by enacting at the same session a law providing that no person on Sunday or any Thanksgiving day "shall serve or execute any writ, process or warrant, order or judgment, except in criminal cases, or for a breach of the peace." R. S. 1879, sec. 4039.

As in the case of Sunday it is confessedly within the power of the collector under the expression "from day to day" to continue the sale from a day to the second day thereafter, and, in view of the fact that Thanksgiving day is by the custom of the country observed as a day when the citizen is expected to rest from his usual vocation, cease buying, selling and exchanging, and turn to thoughts of gratitude to his Creator and benevolence toward his fellow man ; and as, by the law of the state, the day is put upon the same plane with Sunday in regard to the execution of its process, we have no doubt, giving the phrase "from day to day" its usual and ordinary meaning when used in regard to the transaction of matters of business, and the holding of public sales, that it was not only within the power of the collector to continue the sale from the day before to the next day after Thanksgiving, but that in doing so he exercised a wise discretion, if in fact it was not his duty to do so.

The plaintiff having failed to prove that the law had not been complied with in respect of any of the matters complained of, the defendant's deed, conceded to be valid upon its face, should not have been set aside. The judgment is, therefore, reversed, and the bill dismissed. All concur.