HIMMELBERGER-HARRISON LUMBER COM-
PANY, Appellant, v. JAMES KEENER et al.

Division Two, March 9, 1909.

1. **ORDER OF PUBLICATION: Made by Clerk: Meaning of "In
Vacation."** Under Sec. 3494, R. S. 1879, allowing service and
notice to non-residents by order of publication and the publi-
cation thereof, when the facts authorizing publication are
neither stated in plaintiff's petition nor in the affidavit filed at
the commencement of the suit, no order of publication was
allowable in vacation. But where the court was in session in
regular term on March 20th, and on that day adjourned the
term to June 16th, it was between those dates "in vacation,"
and during that interim could make no order of publication,
but the clerk could do so, and an order of publication made
by him on June 12th, if supported by a sufficient affidavit stat-
ing non-residence and if otherwise regular, was valid, and suffi-
cient to support a judgment in the tax suit.

2. ————: **Affidavit: Filed Before Justice.** The affidavit made
before a notary public and stating the essential fact that de-
fendant was a non-resident, although first filed before a justice
of a peace, who had no jurisdiction of the tax suit, was suffi-
cient to support the order of publication. The presumption is
that plaintiff withdrew it on discovering the justice had no
jurisdiction, and filed it with the petition at the commence-
men of the suit with the clerk of the circuit court.

3. ————: ————: **Untimely Filing.** A delay of eight days be-
tween the making of the affidavit of non-residence and the fil-
ing of the petition did not render the order of publication void.
The delay should not be unreasonable, but the statute should
be given a liberal construction.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort,*
Judge.

REVERSED AND REMANDED (*with directions*).

*Oliver & Oliver* and *Ralph Wammack* for appel-
lant.

(1)   The trial court committed reversible error in·
holding that the circuit court of Stoddard county was
not in vacation from and after March 20, 1884, to June

16, 1884; and in holding that the clerk of said circuit court during that interim of time was without legal power to make an order of publication. June 12, 1884, was in the vacation of the court. Sec. 575, R. S. 1899. (2) It is manifest from an examination of the record that the circuit court itself could not make an order of publication from and after March 20, 1884, up to June 16, 1884, because it had adjourned from the one date to the other. The court was ·therefore powerless to act, and if respondent's contention is true, the clerk was without power to act. And so we are driven to the remarkable conclusion that for eighty-eight days the circuit clerk of Stoddard county was without legal power to perform the duties enjoined upon him by the statute in matters of this kind. (3) Adverse possession for ten years, under color of title, will not only bar recovery, but will extinguish the title and confer it upon the adverse occupant. Sec. 4262, R. S. 1899; Ridgway v. Holliday, 59 Mo. 453; Ekey v. Inge, 87 Mo. 493.

*Henry S. Shaw* and *J. F. Blankenship* for respondents.

There must be, either an allegation of non-residence in the petition, or an affidavit embodying that fact, and the affidavit must be filed at the commencement of the suit. R. S. 1879, sec. 3494; Quigley v. Bank, 80 Mo. 289; Schell v. Leland, 45 Mo. 289; Harness v. Cravens, 126 Mo. 233. The fact of the non-residence of the defendant must exist at the time of the making and filing of the affidavit. New York Baptist Union, Etc., v. Atwell, 95 Mich. 239; Crombie v. Little, 47 Minn. 581; Campbell v. McCahan, 41 Ill. 45; Adams v. Hosmer, 98 Mich. 51; Armstrong v. Middlestaff, 22 Neb. 711; 17 Ency. Plead. & Prac., 58. The affidavit was not made in this case, but in a case in a justice's court, and was a nullity in that proceed-

ing. R. S. 1879, secs. 6836, 2876, 473. Justices' courts had no jurisdiction of tax suits. State ex rel. v. Hopkins, 87 Mo. 519. The clerk had no authority to make the order of publication in the original tax suit, because the court was not in vacation, but only in recess. State v. Derkum, 27 Mo. App. 628; Hadley v. Bernere, 97 Mo. App. 314; Warner v. Donohue, 99 Mo. App. 37. For legislative construction of law see: Laws 1883, p. 111; Laws 1885, p. 190. The Acts of 1883 and 1885 are not declaratory of what the law was, but are enactments of a new law; if they were, they would not have a retrospective operation. Black on Interpretation of Laws, p. 371. Whenever proceedings are intended to result in an adjudication, and such proceedings differ from the course of the common law, a strict compliance with all material directions of the statute is essential. Young v. Downey, 150 Mo. 326; Harness v. Cravens, 126 Mo. 233.

GANTT, P. J.—This is a suit to quiet title to four hundred and eighty acres of land situated in Stoddard county, Missouri.

In its petition the plaintiff asserts ownership in this land and open, notorious, hostile, continuous and adverse possession of it under a bona-fide claim of title for more than ten years prior to the bringing of this suit and states that during all that time it and its grantors exercised all the acts of ownership and dominion over said land of which it was susceptible.

The defendants are the children and heirs at law of James Keener, deceased, and in their answer denied plaintiff's title and possession in and to the lands described, and aver ownership of the said lands in James Keener up to the time of his death in June, 1892, and their right to the said lands by reason of descent as children and heirs at law of said James Keener.

On the trial it was agreed that James Keener was the common source of title. The plaintiff then offered a

sheriff's deed from N. M. Cobb, sheriff of Stoddard county, to William P. Renner, dated September 15, 1885, and recorded September 22, 1885, conveying the lands in controversy to satisfy a judgment for taxes ·against said land for the year 1882. The defendants objected to the introduction of this deed, for the reason that they insisted that the judgment under which it was rendered was void, the defendant being a non-resident and there was no affidavit that the defendant was a non-resident of the State of Missouri or had absconded or had absented himself from his usual place of abode in this State; that there was no affidavit justifying the order of publication and the affidavit did not allege that ordinary process of law could not be served upon him in this State, and the notice to the defendant was not published for four weeks but only for four times, or twenty-one days instead of twenty-eight days; and for the further reason that there was no order of record in the case or otherwise authorizing the publication and the clerk had no authority to make the order of publication. The court admitted the deed in evidence subject to the objections. Among these objections, the chief reason assigned, and the one finally sustained by the trial court, was that the clerk of the circuit court of Stoddard county had no authority to issue an order of publication at the time this order of publication was issued, to-wit, on June 12, 1884. The defendant contended that the circuit court of Stoddard county was in session on that date and the clerk was only authorized to issue orders of publication in the vacation of the court. In support of these objections, the defendants offered the following testimony: First, the order of publication made by the clerk on the 12th day of June, 1884, which was in the ordinary and usual form of such orders made by clerks in the vacation of the court. Second, the affidavit of C. L. Keaton, the attorney for the collector in the tax suit, which was in the following words:

"The State of Missouri at the relation and to the use of William C. Harty, Collector of the Revenue of Stoddard county, State of Missouri, vs. James Keener, Defendant.

"Before Moses Harvey, a Justice of the Peace for Stoddard county, Missouri.

"C. L. Keaton, attorney for and in behalf of the above-named plaintiff, makes oath and says, that the above-named defendant in the above-entitled cause is a non-resident and does not reside in the State of Missouri.    C. L. Keaton.

"Subscribed and sworn to before me this 4th day of June, 1884.

"My term of office expires January 12th, 1887.
"EMIL M. WEBER, Notary Public."

This affidavit was endorsed as follows:
"State of Missouri vs. James Keener, Filed June 12th, 1884.
"C. H. BARHAM, Clerk.
"Filed June 4th, 1884.
"MOSES HARVEY, Justice of the Peace."

Third, the proof of the publication was attested by the affidavit of the publisher of the newspaper and showed that it was published as follows: The first insertion, June 14, 1884; the second, June 21, 1884; the third, June 28, 1884, and the fourth, July 5, 1884. Defendant then introduced Thomas H. Ezell who testified he was clerk of the circuit court and the custodian of the records of the said court, and that the records of the said court which he produced in evidence showed that the said court by its order adjourned the March term, 1884, on March 20th to June 16, 1884, on which day it met again. The sheriff's deed was in the ordinary form of a sheriff's deed and recited that on the 17th day of December, 1884, judgment was rendered in the circuit court of Stoddard county in favor of the

State of Missouri at the relation and to the use of William C. Harty, collector of the revenue of Stoddard county, for the State of Missouri, and against James Keener, for the sum of $12.55 for certain delinquent state, county and special taxes and interest assessed and found by the said court to be due and unpaid, upon the south-east quarter and west half of section 33, township 25, range 11, and that said taxes and interest found due upon said real estate for the year 1882 amounted to $12.55, and certain costs which had been taxed at $23.75, which were declared a lien in favor of the State of Missouri upon the said above-described tracts. And then recited the issue of a special execution, the receipt of the same by the sheriff and his levy upon said real estate and his sale of the same at public vendue, and that William P. Renner was the highest and best bidder for the same at and for the price and sum of $32 in consideration of which he sold, transferred and conveyed the same to the said Renner. This deed was duly acknowledged in open court and recorded.

The plaintiff then offered in evidence other conveyances regular in form down to the plaintiff, and then offered in evidence also testimony tending to prove title in plaintiff by adverse possession for more than ten years prior to the bringing of this suit.

As indicating the court's view of the law upon the facts, the court gave the following two instructions:

"1. The court declares the law to be that plaintiff has not adduced any evidence in this cause to justify a finding for plaintiff to title to the lands in controversy by adverse possession and the finding will be for the defendants.

"2. That if the court finds and believes from the evidence in the cause that on the 20th day of March, 1884, the circuit of Stoddard county, Missouri, was adjourned to sit again on the 16th day of June, 1884, and

said adjournment was not a final adjournment of the
March term, 1884, of said court until the next regular
term in course, but was merely an adjournment of said
March term, 1884, until a fixed date on which said
March term continued to be held until the 17th day of
June, 1884, on which date said term was adjourned un-
til court in course, and that on the 12th day of June,
1884, and pending the temporary adjournment of said
March term, 1884, the clerk of said court issued an
order of publication against one James Keener in a
cause entitled, 'The State of Missouri, to the use of
W. C. Harty vs. James Keener,' then pending in said
court, for the reason that said James Keener was a
non-resident of the State of Missouri, and  caused
notice to be served upon said Keener by publication,
and that said cause came on to be heard at the Sep-
tember term, 1884, of said circuit court of said Stod-
dard county, and judgment rendered upon said service
upon and notice to said James Keener, and that the
lands of said Keener were sold to satisfy said judg-
ment; and a deed executed to W. P. Renner upon a
prior levy and sale of said lands under said judgment,
and that plaintiff in this cause claims under said deed;
then and in that event said order of publication and all
proceedings based thereon, including said deed, were
void for want of authority in said clerk to make or issue
order of publication, or the process and notice based
thereon, and the finding of the court will be for the
defendants.''

To the giving of such declarations the plaintiff
duly excepted.

The court refused other declarations of law asked
by the plaintiff.  Thereupon the court entered judg-
ment for the defendant and by its decree dismissed the
plaintiff's bill and vested title to the lands in controv-
ersy in the defendants, and in due form and after
proper steps the plaintiff appealed to this court.

I.   The first vital  proposition in this case is whether the circuit court erred in holding that the circuit court of Stoddard county was not in vacation from and after March 20, 1884, to June 16, 1884, and consequently that the clerk of said court during said interim was without legal power to make an order of publication.

The Revised Statutes of 1879, section 3494, under which the tax proceeding involved in this suit was prosecuted, provided: "That in suits . . . . for the enforcement of liens against either real or personal property, and in all actions at law or in equity, which have for their immediate object the enforcement or establishment of any lawful right, claim or demand to or against any real or personal property within the jurisdiction of the court, if the plaintiff, or other person for him, shall allege in his petition, or file an affidavit, stating that part or all of the defendants are non-residents of the State, . . . . the court in which said suit is brought, *or, in vacation, the clerk thereof, shall make an order* directed to the non-residents or absentees, notifying them of the commencement of the suit," etc.

In Schell v. Leland, 45 Mo. 289, it was held by this court that under the statute allowing service and notice to non-residents by orders of publication and the publication thereof, when the facts authorizing publication are neither stated in plaintiff's petition nor in the affidavit filed at the commencement of the suit, *no order was allowable in vacation,* WAGNER, J., speaking for the court, saying: "The above section is the only one where provision is made for the court or clerk in vacation, issuing an order of publication. The order can only be made by strictly complying with the statute; for, in all cases where constructive service is substituted for actual notice, strict compliance is required."

This case has often been approved by this court. [State ex rel. v. Field, 107 Mo. l. c. 451; Quigley v. Bank, 80 Mo. 289; Hiles v. Rule, 121 Mo. l. c. 255; Williams v. Monroe, 125 Mo. l. c. 586; Harness v. Cravens, 126 Mo. l. c. 249; Charles v. Morrow, 99 Mo. 638; Sutton v. Cole, 155 Mo. l. c. 213; Parker v. Burton, 172 Mo. l. c. 91, 92.]

Adopting this as the settled law of this State, the record presents the question clear and sharp, was there *a vacation* of the circuit court of Stoddard county in the interim caused by the adjournment of that court on March 20, 1884, to June 16, 1884, when it again convened, so as to authorize the clerk of said court to make an order of publication on June 12, 1884? In Jacob's Law Dictionary, vacation is defined as being "all the time between the end of one term and the beginning of another; it begins the last day of every term as soon as the court rises." But in Brown v. Hume, 16 Gratt. (Va.) l. c. 466, it was said: "Thus, whether we look to its own appropriate definition or seek to deduce its meaning from the use made of its correlative by the law-writers, it would seem that there is not attached to the word *vacation,* a well-ascertained, fixed, single, unvarying, technical meaning which is to control the interpretation of a statute in which the word has been employed; but that, on the contrary, there are several well-received meanings of the word." The opinion in that case is well reasoned and its conclusion well sustained.

In Thompson v. Benepe, 67 Iowa 79, the Supreme Court, while recognizing the common law definition, said: "But whether this meaning should be given to the word in any particular instance depends upon the subject-matter, and the necessity which exists that some other meaning should be adopted."

In Conkling v. Ridgely & Co., 112 Ill. 36, the validity of a confession of judgment before a clerk of the circuit court in vacation was challenged. The regular

October term under the law commenced October 2, 1882, and remained in session until December 27th, at which time it adjourned until January 29, 1883, at which day it reconvened and finally adjourned February 3, 1883. On January 12, 1883, the judgment was confessed before the clerk. During term time the law required judgments by confession to be entered in open court. The question was whether there was a vacation so that the clerk could enter the confession and it was held that there was a vacation, the court saying, "We think the term 'vacation' may well be given a different meaning from what it had at common law," but did not mean the ordinary daily recess of the court. [See, also, Furniture Co. v. Mattox, 13 Ind. App. 221.] In other jurisdictions, notably, Massachusetts, it has been ruled that authority to a clerk to take a recognizance *in vacation* did not authorize him to take one on Saturday where the court had adjourned from Friday to Monday and the court adhered to the English rule as to terms and vacations. [Brayman v. Whitcomb, 134 Mass. 525.]

Up to the Act of March 15, 1883, there was a diversity of opinion as to what adjournment or recess of a court constituted a vacation within the meaning of our statutes permitting or authorizing various acts to be done by the judge or clerk in vacation. By that act it was provided: "Whenever any act is authorized to be done by, or any power given to, a court or judge thereof in vacation, the words 'in vacation' shall be construed to include any adjournment of court for more than one day." [Laws 1883, p. 112.] Afterwards, this clause of the act of 1883 was amended by the Act of March 7, 1885, by adding the words "or whenever any act is authorized to be done by, or any power given to, a clerk of any court in vacation, the words 'in vacation' shall be construed to include any adjournment of court for more than one day." [Laws 1885, p. 190.]

In State v. Derkum, 27 Mo. App. 628, the Kansas City Court of Appeals had occasion to construe the Act of 1885 in connection with sections 1762 and 1769, Revised Statutes 1879, in respect to the filing of informations in misdemeanor cases. In that case it appeared that the circuit court of Cole county convened December 7, 1885, and on December 23d adjourned to January 11, 1886; on January 4, 1886, the prosecuting attorney filed an information against the defendant for selling liquor without a license. There was no entry of record of the filing of this information. The defendant filed his motion to quash the information for the reason that it did not appear to have been filed in court and as the court was not in vacation on January 4th, the contention was that it was not filed in any place contemplated by law. In construing the Act of 1885 the court called attention to the fact that section 3126 [R. S. 1879] of which the Act of 1885 was amendatory provided that "the construction of all statutes of this State shall be by the following additional rules, unless such construction be plainly repugnant to the intent of the Legislature, or of the context of the same statute." By section 1769 it was provided: "If such warrant be issued in term, it shall be made returnable forthwith; but if issued in vacation, it shall be made returnable to the next term thereafter; and if defendant be arrested during the term, he shall be brought into court; but if he be arrested in vacation of the court, the officer shall bail him," etc. And the court held that the vacation spoken of in section 1769 clearly referred to the vacation between courts, that is, between a term and the next term thereafter, and that it could not be supposed that the Legislature meant one thing by the term "in vacation" in section 1762 and a different thing by the same term in section 1769, and therefore construed the information in that case to have been filed in term time. We see no occasion for discussing

whether that decision was correct or not in view of the several statutory provisions considered by the court.

In Hadley v. Bernero, 97 Mo. App. 314, the question arose as to whether an appeal from a judgment in an unlawful detainer case had been taken within six days after its rendition, it being the contention of the respondent that the St. Louis Circuit Court was holding its regular term and therefore that the appeal must have been taken within six days under the statute. [Sec. 3370, R. S. 1899.] No proof was offered to show that the court was not in vacation when the judgment of the justice was rendered. Speaking to the general question now under consideration, the court said: "As to the meaning of the sections of the statutes bearing on this question, we think they use the word 'term' to signify the entire period from the first day of a term as fixed by law to its final close, and the word 'vacation' to signify the period between the adjournment of any term and the beginning of another, not merely an interval when the court is not in session from having adjourned for more than a day but not to court in course. [Brayman v. Whitcomb, 134 Mass. 526; Bronson v. Schulten, 104 U. S. l. c. 415; State v. Derkum, 27 Mo. App. 628.] By this construction a temporary adjournment of the St. Louis Circuit Court would not have relieved the appellants of the duty to perfect their appeal from the judgment of the justice of the peace if given in term time, inside of six days after its rendition."

That case was followed by the St. Louis Court of Appeals in Warner v. Donahue, 99 Mo. App. 37. In that case the circuit court of St. Louis county had adjourned its September term from November 30th to December 30th, in order to hold court in the other counties in the circuit, and it was held that this adjournment did not terminate the September term of the St. Louis County Circuit Court so as to exonerate

the appellant from taking his appeal within six days from the rendition of the judgment, in this interim.

These three cases are the only ones which we have been able to find in the decisions of the courts of appeal.

In Railroad v. Evans & Howard Brick Co., 85 Mo. 307, it appears that a writ of error and an order of supersedeas were obtained from one of the judges of this court pending the adjournment of this court for more than one day. On a motion to vacate the order of supersedeas and to dismiss the writ of error, among other things it was said: "And the Laws of 1883, page 111, amending section 3126, Revised Statutes 1879, 'when considered in connection with other statutory provisions already noticed, fully authorizes a judge of this court, when it has adjourned for more than one day, to inspect the record in a cause and to allow a writ of error to stay execution upon the usual terms. The order in this cause made by the circuit court was a final order, from which an appeal or writ of error would lie."

While the St. Louis Court of Appeals in the two cases just cited adopts the common-law definition of the term "vacation," it is to be observed that they make no citation of the decision in Brown v. Hume, 16 Gratt. 466, or Thompson v. Benepe, 67 Iowa 79, or Conkling v. Ridgely & Co., 112 Ill. 36, but their decision rests in the main upon the common-law definition of the word and Brayman v. Whitcomb, 134 Mass. 526. We have no doubt whatever of the correctness of the decision in Hadley v. Bernero, 97 Mo. App. 314, on the ground that there was no evidence in that case to show that the court was not in vacation on the day when the judgment of the justice of the peace was rendered. And the presumption was properly indulged that as the circuit court retained and decided the cause, it found the appeal was taken in vacation. [Bauer v. Cabanne, 11 Mo. App. 114.] The general

statement of the law as to the meaning of the word
"vacation" was not essential to the decision of the
cause.

In the case of Ex parte Santee, 2 Va. Cases 363,
in delivering the opinion of the judges, DADE, J., said
in speaking of the definition of the word "term" in
Jacob's Law Dictionary, "It cannot be denied that in
common parlance in some of the statutes, and amongst
the law-writers, the word has been often indiscrim-
inately used to express the actual session of the court,
and the stated time when it should sit. This gives
room for construction, and imposes the necessity of
inquiring into the reason of the law, of considering
the word in the context, and comparing the relative
provisions of the section, so as to ascertain the sense
in which the word was used by the Legislature in this
particular law; and upon the result of this inquiry
the decision of this question turns." Proceeding to
examine and comment on the several clauses of the
section, he came to the conclusion that in each of the
passages in which the word was used it was intended
to denote not the time appointed for the holding of
the court, but the actual sitting of the court.

In Brown v. Hume, supra, Judge DANIEL, in the
further discussion of the meaning of the word "vaca-
tion," said: "In view of the evil sought to be cured
by the Act of 1819, to-wit, the useless and unnecessary
imprisonment of debtors, we can see no reason for
supposing that the Legislature, in framing the law of
1819, intended to leave an interval in which a party
detained for want of bail could not confess judgment
either in the clerk's office or in court. And as the
language of the statute readily admits of an inter-
pretation extending the period during which the clerk
may take confession in his office, to the commencement
of the actual sitting of the court, no reason is per-
ceived why we should not adopt that interpretation."
Accordingly it was held in that case that the Code

of Virginia, page 171, section 41, which only author-
ized a confession of judgment in the clerk's office *in
vacation,* permitted the confession of a judgment in
the clerk's office on the morning of the first day of
the term of the court before the hour for the opening
of the court for that term.

And we have seen the Supreme Court of Illinois
in Conkling v. Ridgely & Co., 112 Ill. 36, sustained
a confession of a judgment in an interval between the
adjournment of the circuit court from December 27th
to January 29th, and held that to hold otherwise would
be to adopt a legal fiction and give it effect over what
was the real condition, to the denial of the enlarged
remedy which was intended to be given by the statute.
Said the court: ''We think that under this act the
term 'vacation' may well be given a different mean-
ing from what it had at common law, as above given.
Under the earlier organization of courts of England,
'terms' of the court were four periods in each year.
They commenced on fixed days, and had a fixed time
of termination, and they aggregated ninety-one days.
The vacations embraced all the days in the year not
included in the 'terms.' Any such a period of recess
of a court of more than a month's duration, as we
find in this case, was unknown in that system. The
early laws of this State, prior to December 9, 1871,
provided for dividing the State into judicial circuits,
and fixed the times for the commencement of the terms
of the circuit court in each county. In no case did the
statutes in express terms fix the duration of the terms
of such courts, though as the judges were required
to hold terms in the different counties on fixed days,
and had no authority to hold court in one county at
a time the law required them to hold court in another,
and only one term of a circuit court could be held or
be open at any one time in a circuit, it followed, as
a necessary construction of the statute, that upon the
occurrence of the time fixed by law for the opening

of the court in any one county in a circuit, the circuit courts in every other county stood adjourned until court in course. [Archer v. Ross, 2 Scam. 303.]'' The court then comments upon the change of the statutes of Illinois, which provided that terms of the circuit court might be held in two or more counties in the same circuit at the same time, and that it should not be necessary to close any term in any county before the business of that term was disposed of, in order to begin a term in any other county in the same circuit, if any circuit judge of the State could be had to preside over either of said terms. The Act of February 22, 1872, of that State ''conferred upon the circuit courts, when in session, the power to adjourn to any day not beyond the first day of the next term of the court in that county fixed by law. The effect of these statutes was to change the law in respect to the peremptory adjournments made necessary by the laws in force before, and to leave the duration of the terms of the courts practically at the discretion of the judges.'' The striking similarity of that judicial system and our own in regard to the power of courts to adjourn their terms to any day not beyond the beginning of the first day of the next regular term, it seems to us, makes the decision of the court in that case very persuasive in the determination of the point now under consideration as to the effect of the adjournment of the Stoddard Circuit Court from March 20th to June 16, 1884, and we think calls for the application of the principles therein stated to the facts of this case. After the circuit court had adjourned from March 20, 1884, up to June 16, 1884, we are clearly of the opinion that it could not make an order of publication during the interval between those dates, and if the defendants' contention be true, the clerk of that court was without power to make any order of publication in any case for a period of eighty-eight days. We think independently of the Act of 1883 that after the ad-

journment on the 20th of March, there was a vacation until the 16th of June, when the court reconvened according to its adjournment, and such we think has been the construction placed upon section 3494, Revised Statutes 1879, and the subsequent revisions to the same effect by the bar of this State and the courts generally. And in our opinion this has been the proper construction of that provision of our law in regard to the power of the clerk in vacation to make orders of publication to non-residents or absentees. A different construction would in many cases result in a needless delay in the commencement of actions and would be unreasonable. The Act of March 15, 1883, page 111, and the subsequent Act of 1885 were clearly enacted to set this question at rest forever, and to confirm the prevailing view taken by the courts and the bar of this State as to what constituted a vacation within the meaning of the several acts of this State in which a judge or clerk in vacation were empowered to do certain acts. The Act of 1883 was clearly in force at the time the suit was brought to enforce the lien of the State for the delinquent taxes of the year 1882, and while by its terms it refers to any act authorized to be done by or any power given to a court or a judge in vacation and provides that the words "in vacation" shall be construed to include any adjournment of court for more than one day, it is hard to understand how if the court was in vacation for the purpose of permitting the judge to do an act authorized to be done by him in vacation, why the court would not also be in vacation so as to authorize the clerk also to act, even prior to the Act of 1885, which included the clerks specifically.

In our opinion the clerk of the Stoddard Circuit Court was authorized to make an order of publication in that suit, for the reason that there was a vacation

of the circuit court of that county at the time he made the same.

II. This brings us to the other contention, that the affidavit itself which was filed with the clerk and which has been set out in the statement of the case was utterly insufficient to sustain the order of publication.

The objection that the affidavit was not made in this case but in a justice's court is wholly untenable. The affidavit was made before a notary public who was fully authorized to administer the same and stated the essential fact that James Keener the defendant was a non-resident of the State. The fact that it was first filed before Moses Harvey, a justice of the peace, did not affect its validity. As said by defendant, the justice had no jurisdiction of the suit, as was decided by this court in State ex rel. v. Hopkins, 87 Mo. 519. Presumably discovering that the justice had no jurisdiction the plaintiff withdrew it and filed it with his petition in the tax suit and it was none the less an affidavit filed with the petition at the commencement of the suit, than if it had never been filed with the justice, and had been originally filed with the clerk of the circuit court. Every presumption will be indulged that the affidavit was withdrawn from the justice by his consent, but as he had no jurisdiction of the case he could not have prevented the dismissal of the cause and the withdrawal of the petition and affidavit.

III. As to the other insistence, that because the affidavit was made on the 4th of June, 1884, and was not filed until the 12th of June, 1884, in the circuit court, the circuit court obtained no jurisdiction, it is to be said that the statute should be given a reasonable construction. In a direct proceeding in Campbell v. McCahan, 41 Ill. 45, it was held that an affidavit made twenty days before the filing of the bill was not a

reasonable time and failed to confer jurisdiction. In Armstrong v. Middlestadt, 22 Neb. 711, an affidavit made one day and filed the next, was held sufficient, but the court remarked, *obiter,* that ''in sustaining the affidavit we do not wish to go beyond the facts of this case and to hold an affidavit made several days before the commencement of an action would be sustained.'' In New York Baptist Union v. Atwell, 95 Mich. 239, a drastic construction was given the statute, and ''where an affidavit for publication was made on the 15th of the month, and the order of publication was not made until the 20th,'' it was held the service was insufficient, in a collateral suit in ejectment, to confer jurisdiction. On the other hand, this court, in Graham v. Bradbury, 7 Mo. 281, held that ''the objection that there was an interval of nine or ten days betwixt the making of the affidavit and the issuing of the writ and the state of facts might have changed during the interval,'' was untenable. Judge SCOTT said: ''The party must take advantage of this by plea. . . . Some time must necessarily in many cases intervene between the making of the affidavit and the issuing of the writ.'' In view of the various utterances on this subject, our opinion is that although there was a delay of eight days between the making of the affidavit and the filing of the suit, it did not render the order of publication void. If the making of the affidavit and the filing of the petition must both occur on the same day, it would in actual practice work great inconvenience in many instances, and in some great injustice. We can conceive of cases where the delay would be so great that it would be wholly unreasonable and should be held ground for holding the order insufficient, but we are unwilling to say that the delay of seven or eight days in this case rendered the whole proceeding void, and this is the view taken by Van Fleet on Collateral Attack on Judicial Proceedings, section 330. Our courts have

not, we think, applied the drastic rule adopted by the Michigan court on this subject. It follows that in our opinion the judgment cannot be held void because the order of publication was not based upon a sufficient affidavit.

As the sheriff's deed was based upon a valid judgment and the plaintiff has acquired by regular mesne conveyances the title of defendants' ancestor, James Keener, the circuit court erred in decreeing title in defendants, as his heirs at law, and accordingly the decree of the circuit court is reversed and the cause remanded with directions to enter a decree vesting the title in plaintiff. *Burgess* and *Fox, JJ.,* concur.