# SARAH STANTON v. RICHARD W. THOMPSON, MAX Z. LEVY and WILLIAM WALTER; MAX Z. LEVY, Appellant.

### Division One, March 31, 1911.

1. **CITIES: Regulating Municipal Matters: Suits on Taxbills.** The policy of this State has been to allow cities to regulate matters of purely municipal concern by charter provisions; and the enforcement of the lien of a special taxbill for sidewalk construction is such a matter.

2. **————: ————: ————: Order of Publication.** Hence, where the charter ordains that, in suits before a justice of the peace, service by publication may be had as in suits in the circuit court, the validity of an order made by a justice ordering such publication will be determined by the same rules as the validity of a similar order made in the circuit court is determined.

3. **ORDER OF PUBLICATION: Strict Observance of Statute.** The service of process by newspaper publication is allowed of necessity, and is due process of law more in form than substance; it is a harsh and highly technical substitute for service of process, it is *strictissimi juris*, and being of rigid right a party invoking it is entitled to cold law—no more, no less.

4. **————: No Finding of Non-residence.** Plantiff sued defendants before a justice as residents, on a special taxbill, and thereafter filed no affidavit of non-residence. The constable's return recited: "by making diligent search and failing to find defendants in Jackson county." Thereupon the justice made an order of publication, based on an entry reading: "It appearing to the satisfaction of the justice from the constable's return that the defendants are non-residents of the State of Missouri and cannot be served by the ordinary process of law, the court makes the following order of publication," etc. *Held*, that the constable's return was no proof of non-residence, and the court did not "satisfy" itself that defendants were non-residents, and the judgment was void, and the consequent sale of the lots under execution was void.

5. **————: ————: Admitted at Trial.** And the fact that it was admitted at the subsequent trial of the ejectment suit, that defendants in that were non-residents, has no retrospective virtue. The justice did not have that admission before him.

**6. LACHES:** *Knowledge: Non-Action: Reliance.* Where there is nothing to show that plaintiff, a non-resident, had notice that defendant purchaser at the sale under the void tax judgment had made improvements on the lot, or that such purchaser put any reliance upon her non-action, or that she was remiss in proceeding, there is no laches in the case.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

AFFIRMED.

*Edward C. Wright* and *M. F. Ringolsky* for appellant; *Gerson B. Silverman* of counsel.

*W. W. Calvin* and *J. B. Hamner* for respondent.

LAMM, J.—The petition in this case is in two counts—the first, ejectment for lot 12 in block 16 in Goodrich's addition to Kansas City; the second, under old section 650, now Revised Statutes 1909, section 2535, as amended, to try and determine title.

The joint answer alleges that Levy is owner and in lawful possession of the lot; that his co-defendants are his tenants; and that plaintiff has been guilty of laches barring recovery. By way of "cross bill," it then alleges that Levy acquired the property in good faith, constructed improvements (a house and barn) thereon, of a given value, which improvements plaintiff "stood by and permitted;" and that Levy had paid $250 taxes, general and special, and made "other improvements and paid taxes in good faith," believing he had good title and having no notice of any claim of plaintiff. Wherefore, Levy, if judgment of ouster go, prays judgment against plaintiff for $1250 as compensation "for his improvements."

A reply came in denying allegations of new matter, and the cause was submitted on an agreed statement of facts, other admissions and certain documen-

tary proof. Therefrom it appears that defendants
have possession; that one Brooks was the common
source of title; that in September, 1889, he mortgaged
the premises to plaintiff to secure $6000 due in one
year; that in 1891, he conveyed to one Wheeler, sub-
ject to the incumbrance; that in 1896, Wheeler conveyed
to plaintiff; that plaintiff never afterwards conveyed,
and now has title unless Levy got title by a certain
special tax proceeding, presently noted; that during
all times plaintiff was a resident of Grand Rapids,
Michigan, and Wheeler of Massachusetts; that in 1891
Kansas City duly issued a special taxbill against the
lot for $5.99, bearing ten per cent interest, for con-
structing a sidewalk in front, and delivered the same
to the sidewalk contractor, Barnes; that Barnes built
the sidewalk by virtue of a city ordinance; that on
November 2, 1893, Barnes sued plaintiff and Wheeler
on the taxbill before one Browne, a justice of the
peace of Kaw township (which includes Kansas City)
in Jackson county, Missouri, to enforce a lien on the
lot. The petition in that suit is not assailed and does
not concern us further than that there was no allega-
tion therein nor was there any affidavit filed that de-
fendants Stanton and Wheeler were non-residents of
the State of Missouri. The justice of the peace at
sundry times issued original, *alias* and *pluries* sum-
monses, in turn, against defendants as residents, and
delivered them in turn to one Heacock, constable of
Kaw township. These summonses were severally re-
turned, executed by Heacock, viz., "by making diligent
search and failing to find defendants in Jackson coun-
ty, Missouri." Finally, on February 18, 1894, the
justice made an order of publication, based on an
entry reading: "It appears to the satisfaction of the
justice *from the constable's return* that the defend-
ants herein are non-residents of the State of Missouri
and cannot be served by the ordinary process of the
law, the court makes the following order of publication,

to-wit'' (Here follows the order of publication, reciting that defendants are non-residents of the State of Missouri and cannot be summoned in this action). That order is not criticised, except in the foregoing particulars, hence need not be reproduced. It is agreed that proof of publication was made; that there was no personal service on any of the defendants; that a judgment followed the proof of publication against the lot for the face of the special taxbill and interest, viz., $7.25; that a certified transcript thereof was duly filed in the office of the circuit clerk; that such clerk issued execution thereon in due form and 'it was delivered to the sheriff; that the latter made levy and advertisement and knocked the lot down to Levy as the highest and best bidder at sheriff's vendue; that a certificate of sale was issued; and that six months thereafter a sheriff's deed followed, which was duly acknowledged, delivered and recorded. It was further admitted that monthly rents and profits are $10; that Levy paid $250 in taxes and made improvements on the lot of the value of $500; that the facts and proceedings mentioned were all the facts and proceedings relied upon by Levy to divest title out of plaintiff and into him. The sheriff's deed to Levy and other deeds and exhibits were put in evidence, but their contents are afield in the light of the foregoing admissions.

The court found the issues for plaintiff as to title, right to possession and rental value, and for defendant Levy as to the good faith of his claim of ownership and the value of his improvements ($500), and declared a lien in his favor for that sum less rents and profits ($416)—it found the rental value at $10 per month until possession be restored to plaintiff. And having so found, decreed accordingly and ordered executions in favor of plaintiff and defendant Levy to follow the separate findings.

Defendant Levy on due steps taken brought the case up by appeal.

The questions are: (1) Is the tax judgment void for want of jurisdiction (and herein of collateral attack); and (2) is plaintiff guilty of laches defeating recovery.

My brethren all agree with me that the decree was right and must be affirmed. This, because:

(a). The charter of Kansas City ordains that, in suits before a justice of the peace to enforce special taxbills, service by publication may be had as in suits in the circuit court. The policy of this State has been to allow cities to regulate matter of purely municipal concern by charter provision (State ex rel. v. Field, 99 Mo. 352; Brunn v. Kansas City, 216 Mo. l. c. 117, et seq.), and the enforcement of the lien of special taxbills for sidewalk construction is such matter. [Harris v. Hunt, 97 Mo. 571; Carpenter v. Roth, 192 Mo. 658. See, on a kindred matter, Lynch v. Donnell, 104 Mo. 519.]

(b). By force then of express charter terms, service by publication may be had only as in suits in the circuit court. That call points to the general statutes for the conditions under which effective newspaper service may be had. In going there, we go quickened by the cardinal precepts, *first,* that where a statute creates a new right and prescribes the remedy, the remedy prescribed is preclusive and must be followed; and, *second,* that service of process by newspaper publication is allowed as of necessity. It is due process of law more in form than substance. However convenient, it is a harsh and highly technical substitute for service of process; therefore, is *strictissimi juris,* and (being of rigid right) a party invoking it is entitled to cold law—no less, no more. [Parker v. Burton, 172 Mo. l. c. 91, *et seq.*; Morrison v. Turnbaugh, 192 Mo. l. c. 446; Davis v. Montgomery, 205

Mo. l. c. 283, *et seq.*; Ohlmann v. Sawmill Co., 222 Mo. l. c. 67 *et seq.*, and cases cited.]

Attending to the statutes—by section 1770, Revised Statutes 1909, it is ordained, among other things, that an order of publication may be made in a suit to establish a lien against real estate " . . . if" (Take notice of that *"if,"* for there is weighty matter coiled up in it) "the plaintiff or other person for him shall allege in his petition, or at the time of filing the same, or at any time thereafter shall file an affidavit stating, that part or all of the defendants are non-residents of the State . . . or have absconded or absented themselves from their usual place of abode in this State, or that they have concealed themselves so that the ordinary process of law cannot be served upon them."

In this case there was no affidavit of non-residence filed with the justice at any time prior to the order of publication, nor was there any allegation in the petition of such non-residence. Absent a compliance with the imperative provision in that behalf in section 1770, we must go elsewhere for warrant for the order. It is nothing to the point that the agreed statement of facts shows plaintiff and Wheeler were non-residents in fact. That admission is *ex post facto*. It has no retroactive virtue. *We* have it, but the *justice* did not. His act must be judged in his light, not ours.

(c). Going elsewhere for statutory warrant for the order, we find section 1772, *ibid,* ordaining that: "When, in any of the cases contained in section 1770, summons shall be issued against any defendant, and the sheriff to whom it is directed shall make return that the defendant or defendants cannot be found, the court, *being first satisfied that process cannot be served,* shall make an order as is required in said section."

Recurring to section 1770, in obedience to the call in section 1772, we find that an order of publication

may go on any one of several hypotheses. First, when defendants or part of them are non-residents. Second, when they have absconded or absented themselves from their usual place of abode in this State; and, third, when they have concealed themselves so that the ordinary process of law cannot be served upon them. Observe, the court may act under section 1772 only when a return of *non est inventus* comes in. Such return is a condition precedent to any action at all. When that return comes in the court takes the matter in hand under section 1772.

There is such a great body of judicial exposition on those two sections that new exposition by way of threshing over the old learning in a somewhat vain hope to add aught of value to jurisprudence smacks of vanity. To sum up: The rule to go by (under the facts of our case) is that the mere *non est* return of the officer, absent an affidavit of non-residence, or other grounds of judicial satisfaction, is not, *ex proprio vigore,* enough for an order of publication against defendants as *non-residents of the State.* Such return furnished occasion for judicial investigation and the court going on to investigate becomes "satisfied" therefrom and issues or withholds its order on a judicially determined fact, viz., *"that process cannot be served."* To illustrate: A *non est* return by an officer (tied by a short tether like a constable, as in this case) might be a link in the chain of evidence tending to show that defendants had absconded or absented themselves from their usual abode if they had any in Jackson county, or that they had concealed themselves so that the ordinary process of law could not be served upon them. But what evidence of probative force would it be of the fact that defendants were *non-residents of the State*—especially so when plaintiff refused to make an affidavit to that effect as contemplated by the statute?

The fact the court must first be satisfied of (under Sec. 1772) was "that process cannot be served." In the case at bar the order recites: "It appears to the satisfaction of the justice from the constable's return that the defendants herein are non-residents of the State of Missouri and cannot be served by ordinary process of law." Thereby the justice announced satisfaction of something, but what was that something? It was that from the constable's return certain things appeared, and then goes on to recite what appeared there. If the justice had stated what the constable's return actually showed and then gone on to recite and find from the court's own investigation that it appeared process cannot be served and that defendants were non-residents of the State, we would have a different case to deal with. But confining ourselves to the officer's return, as the justice did, we find it reads that he made "diligent search and *failed to find defendants in Jackson county, Missouri.*" It was not a particle of proof of non-residence and an order of publication built, as here, on such foundation condemns itself. It is nonsense. Here was a plaintiff suing certain defendants as residents and issuing summons against them as such. Finally, the case proceeds to judgment against them as non-residents. That "about face," it is sought to justify by a constable's return affording no basis for the fact.

Clearly, the order of publication did not comply with the statute. Therefore, Justice Browne got no jurisdiction of the case. His judgment was *coram non judice,* and of no account. Therefore the sheriff's deed conveyed nothing to Levy and is wide open to collateral attack. The propositions announced are well within the reasoning and holding of a line of cases, such as: Cummings v. Brown, 181 Mo. 711; Tooker v. Leake, 146 Mo. 419; Van Natta v. Real Estate Co., 221 Mo. l. c. 378, *et seq.*; Land Co. v. Land & Cattle

Co., 187 Mo. l. c. 435; Harness v. Cravens, 126 Mo. 233; Kelly v. Murdagh, 184 Mo. l. c. 381, *et seq.*

The broad language of the principal opinion in Harness v. Cravens in certain other particulars has been doubted and much shaken (Mangold v. Bacon, 229 Mo. l. c. 472), but the case has been constantly cited and followed on the point now up—*exempli gratia,* by BRACE, P. J., in Tooker v. Leake, supra, p. 434; by BURGESS, J., in Young v. Downey, 150 Mo. 328; by MARSHALL, J., in Feurt v. Caster, 174 Mo. 303; by VALLIANT, J., in Kelly v. Murdagh, 184 Mo. 381; by Fox, J., in Vincent v. Means, 184 Mo. 344; by VALLIANT, J., in Land & Mining Co. v. Land & Cattle Co., 187 Mo. 435; by WOODSON, J., in Hinkle v. Lovelace, 204 Mo. 219; by WOODSON, J., in Davis v. Montgomery, 205 Mo. 284; by GANTT, P. J., in Lumber Co. v. Keener, 217 Mo. 530.

(d). When laches appear a court of equity remains passive and refuses to grant relief although statutory limitation has not run. But that statute cannot be ignored, except on equitable grounds appealing strongly to a court of conscience. Sometimes laches rise almost to the dignity of estoppel and are akin to it. The doctrine of laches is the handmaid of equity, comes from her workshop and may be invoked only in aid of an existing equitable right. If plaintiff had "stood by" as the answer alleges, knowing Levy was in possession and claiming title in good faith, and had permitted him without protest or notice to make valuable improvements, we would have a different case to deal with, but this plaintiff stood afar off in far country. There is nothing to show she had notice of improvements or that Levy put any reliance on her nonaction, or that she was remiss in proceeding. We see no laches in the case. [Rutter v. Carothers, 223 Mo. l. c. 640; Dexter v. McDonald, 196 Mo. l. c. 399 *et seq*; Shelton v. Horrell, 232 Mo. 358.]

(e). Counsel for plaintiff claim the deed was further void because of a certain charter provision they say was violated. That provision seems to require a plaintiff within a time certain after the receipt of a taxbill to file a certain written statement in the office of the city treasurer—failing which, the land is freed from the lien and may not be sold under the judgment. Counsel for Levy contend such charter provision should have been specifically pleaded as a defense, and insist there have been charter changes operating to avoid the force of the point. But we need not pursue the matter. If the tax deed be void because the court was without jurisdiction to render the judgment, as we have already held, it cannot become any more void for judicial purposes because of another ground—*once* void is enough. If a man is drowned in the shallow water of ebb tide, what does it matter to him that presently flood tide may come in with more water? The point is reserved for decision in some case turning on it.

The premises considered, the decree did equity. Accordingly, it is affirmed. All concur, except *Valliant, J.*, who is absent.