# OCTOBER, 1940.

WILLIAM T. BYERS, RESPONDENT, v. THE SECURITY BENEFICIARY SOCIETY, APPELLANT.—147 S. W. (2d) 116.

Kansas City Court of Appeals. January 6, 1941.

*Edwin C. Orr* for respondent.

*Donald Lamm, Lawrence Barnett, A. W. Fulton* and *Harry L. Ladbury* for appellant.

BLAND, J.—This is a suit on a beneficiary certificate. There was a verdict and judgment in favor of plaintiff in the sum of $1000, and defendant has appealed.

The certificate is in the sum of $1000, and was issued on December 18, 1911, by defendant, a fraternal beneficiary association, upon the life of Flemon Byers, one of its members, and in favor of his wife, Agnes W. Byers, as beneficiary. Insured changed his beneficiary on April 9, 1931, to the plaintiff, William T. Byers, and the certificate was reissued to the insured showing such change. Insured died on May 30, 1939, at the age of 75 years.

The petition contained the usual allegations found in a petition on an insurance certificate of this kind, including an allegation of the compliance with all of the terms of the contract and the payment of all "premiums" due upon the certificate (described therein

as a "policy" of life insurance) to the time of the death of the insured.

Among other things, defendant, in its answer, admitted issuing the certificate sued upon but alleged that, on or about July 25, 1934, Flemon Byers applied for the exchange of the certificate for a new and different certificate and, pursuant to said application, the old certificate was surrendered by him and was cancelled and there was issued to him, in exchange, a new certificate. The answer denied that the beneficiary certificate sued on was in force and effect at the time of the death of Flemon Byers and denied that the premiums or assessments due thereon were paid up to and including the time of the death of the said Flemon Byers, and alleged that from and after the date of the execution of the new certificate the old certificate was cancelled. The answer also contained a general denial.

Plaintiff filed a reply consisting of a general denial of all the new matter contained in the answer and specifically denied that the certificate sued on was surrendered for cancellation and that Flemon Byers applied for a new certificate in lieu thereof and pleaded that, at the time of the purported exchange of the certificate sued on, for the new certificate, Flemon Byers was insane and that defendant at the time knew it. The parties went to trial on these pleadings.

Plaintiff introduced the original certificate in evidence and rested. Thereupon, defendant offered an instruction in the nature of a demurrer to the evidence, which the court overruled.

The certificate sued upon was what is called a current cost certificate and contained no provision for reserve values. It provided for a monthly assessment of $2.14 and that "This rate of assessment is subject to triennial revision as provided in laws of the Association." The evidence shows that the assessments were increased from time to time and that defendant, on May 28, 1935, increased the assessments on such certificates by amending its by-laws so that the monthly rate of assessments on persons of the age of insured became $10.55.

Defendant's evidence tends to show that Flemon Byers, on July 25, 1934, executed an application for the exchange of the original certificate for a new certificate described as "American Experience 4% Whole Life" with full legal reserve values and that the new certificate was issued to him. It appears that the last assessment paid by insured was for the month of October, 1937.

Defendant offered to prove that between July, 1934, and the time of his death, Flemon Byers paid $394 in assessments, which was not sufficient to keep the original certificate in force, if it had not been cancelled. Defendant also offered to prove facts showing that the assessments paid were insufficient to keep the new certificate in force to the death of Flemon Byers and that the new certificate was more favorable to the insured than the old, in that, the old certificate would have lapsed prior to the date of the new one under

the payments made by the insured to the defendant after the surrender of the original certificate. The court refused to allow defendant to show these facts on the theory that it had not pleaded non-payment of assessments.

Plaintiff, in support of his reply, introduced evidence, which he claims tends to show that insured was not competent mentally to make a contract at the time he applied for the issuance of the new certificate. Defendant contends that this evidence does not measure up to that required to establish mental incapacity of the insured but merely tends to show that he exhibited some mental infirmities, consisting of eccentricities and peculiarities due to old age, and not amounting to mental incapacity to make a contract. However, for the purposes of this case, we may assume that plaintiff's evidence tended to show that insured was mentally incapacitated at the time in question to make the exchange of certificates. Defendant introduced evidence tending to show that insured was mentally competent to make the exchange.

It is admitted that insured was not under guardianship at the time of the exchange of the certificates. There is no evidence that defendant knew or should have known that insured was insane at the time of the exchange. There is no evidence that plaintiff, or anyone else, offered to restore the *status quo* by tendering to defendant, before suit, the return of the new certificates and sufficient money to pay the assessments that would have become due on the old certificate after its surrender in order to have left it in force at the date of the death of insured. There was no allegation in the reply that any of these things had been done, or offer in the reply to do them, or that insured had paid a sufficient amount of money to continued the old certificate in force to the date of his death.

Defendant insists that the court erred in refusing to give its instruction in the nature of a demurrer to the evidence submitted at the close of all the evidence, for the reason that plaintiff could only avoid the contract, wherein insured surrendered the old and accepted the new certificate in lieu thereof, by a suit in equity to annul and cancel the agreement. There was no objection to trying the case as a suit at law and it fairly appears from the record that it was tried on the theory, by both parties, that it was such a suit and, consequently, it will be so treated in this court (Kelly v. United Mut. Ins. Asso., 112 S. W. (2d) 929), in accordance with plaintiff's contention.

However, it is further insisted by the defendant that its instruction in the nature of a demurrer to the evidence should have been given for the reason that since insured had not been adjudged insane, the contract wherein the certificates were exchanged was not void, but merely voidable; that in order to void it plaintiff was required to

allege and prove that the contract was inequitable and defendant knew of insured's incapacity.

"Where a contract with an insane person has been entered into in good faith, without fraud or imposition, for a fair consideration, of which the incompetent has received the benefit, without notice of the infirmity, and before an adjudication or insanity, and has been executed in whole or in part, it will not be set aside unless the parties can be restored to their original position." [28 Amer. Jurisprudence, p. 716. See also, 9 C. J., p. 1215; 14 R. C. L., pp. 584, 585; 32 C. J., 734, 735; Wells v. Covenant Mut. Benefit Asso., 126 Mo. 630; Jamison v. Culligan, 151 Mo. 410; Doty v. Mumma, 305 Mo. 188.] Such "contract may be avoided without restoring or tendering the consideration received, when such consideration was not beneficial to the insane person." [32 C. J., p. 737.] "The burden of proof upon the issue of insanity, in cases involving contracts or conveyances, rests upon the person who raises this issue, as where he seeks to avoid or disaffirm a deed or contract upon the ground of the mental weakness or insanity of the grantor or of the contracting party." [28 Amer. Jurisprudence, p. 753; 32 C. J., pp. 734, 736, 756; 8 Crouch Cyc. of Ins. Law, p. 826.]

There is authority holding that the burden is upon the person claiming insanity of the insured to not only establish such insanity but, in addition, that the other party had knowledge of the incompetency of the person with whom he completed the transaction, and that he lacked good faith in dealing with the other, where such are essential elements in securing the avoidance of the contract. Other authorities hold that such a person is required to prove only the insanity, whereupon the burden is shifted to the other party to prove good faith and lack of knowledge of the insanity. The former seems to be the rule in Missouri. See, Jamison v. Culligan, 151 Mo. 410, where the court said:

"It must appear upon the face of the petition either that the defendant knew that the man with whom he was dealing was insane and took advantage of him, or else, if he dealt with the insane man without knowledge of his misfortune and dealt fairly the petition must show both an ability and a willingness on the part of the plaintiff to put defendant *in status quo.*"

In his reply plaintiff pleaded that defendant had knowledge of insured's insanity at the time of the exchange of the certificates. This plaintiff wholly failed to prove and the instruction in the nature of a demurrer to the evidence should have been given; and the cause must be reversed. However, the cause should not be reversed outright if there is room for plaintiff to amend his reply so as to allege that, whereas, defendant did not know of insured's insanity at the time in question, plaintiff having desired to avoid the agreement had offered, before suit, to place defendant *in status quo* by

tendering to defendant sufficient money to pay all dues and assessments that would have become due upon the certificate sued upon up to the time of the death of the insured which, under the authorities, it was his duty to pay. [See, Wells v. Covenant Mut. Benefit Asso., *supra.*] However, no such allegation can be made because such things were not done. Neither could plaintiff allege that he had tendered the new certificate to defendant for concededly this was not done. It was necessary for plaintiff before suit to have tendered at least the money in order to put defendant *in status quo.*

While in the Wells case it was only necessary to allege willingness on plaintiff's part, he having claimed insanity on the part of the insured, to pay all the assessments, that was an equity case and this is a suit at law. While the substantive rules of law are the same in suits at law and in equity, the procedure is different. In suits at law tender must be made before suit. [Reed v. Gill et al., 201 Mo. App. 457; Met. Paving Co. v. Investment Co., 309 Mo. 638, 653, 654; McCoy v. McMahon Constr. Co., 216 S. W. 770; Malkmus v. Cement Co., 150 Mo. App. 446; Wessell v. Waltke, 196 Mo. App. 582, 592; Lomax v. Elec. Ry. Co., 119 Mo. App. 192, 199.]

We have examined the cases cited by plaintiff and find them not in point. In Nichols et al. v. Hardman, 62 Mo. App. 153, the defense was based upon insanity of the defendant and overreaching. Upon such a theory there was no necessity for the return of the machine received by the defendant in the transaction over which that suit arose. [28 Amer. Jurisprudence, p. 727; 9 C. J., 1, 1216.] An instruction in that case was approved although it did not cover the question of restoration of the *status quo.* So far as the opinion in that case shows no such question was raised.

However, plaintiff contends that insured received nothing from the defendant at the time of the exchange of the certificates and there was nothing to tender back. In this connection, plaintiff contends that insured paid more to the defendant, after the exchange of the certificates, than was necessary to keep the old certificate in force. This contention is based upon the theory that the rate of the old certificate was $2.15 per month. That was the original rate, but there is evidence that it was changed, and there is no suggestion in the record to indicate that plaintiff can ever prove to the contrary. Plaintiff admits that the company, under the law of this State, had the right and authority to raise the assessments on such certificates and, undoubtedly, such is the law. [Jackson v. Security Benef. Assn., 139 S. W. (2d) 1014.] The certificate, on its face, shows that the rate of assessment might be changed. The evidence, or defendant's offer of proof, clearly does not establish that insured paid a sufficient amount to keep the old certificate in force until his death. There is nothing to be gleaned from the record from which it could even be suggested that the payments were sufficient to do as plaintiff contends.

Plaintiff insists that it was unnecessary to tender the new certificate to the defendant for the reason that defendant contends that it had lapsed by reason of non-payment of assessments and, herefore, had no value. We need no, and do not, pass upon this question for the reason it was necessary for plaintiff, at least, to have tendered enough money to cover the amount of the unpaid assessments, which was not done.

Defendant's Instruction No. 5 told the jury, in effect, that if the insured executed the application for the exchange of the certificates, their verdict should be for the defendant "unless you should find that at said time the said Flemon Byers was mentally incompetent to make a contract as in another instruction defined." Defendant's Instruction No. 6, in effect, defines what was meant by "mentally incompetent."

Plaintiff contends that by offering its Instruction No. 5, defendant joined with plaintiff in the theory that the latter could recover without showing tender to defendant of sufficient money to pay the assessments on the old certificate to the date of insured's death, together with the new certificate. It appears that, in submitting the case, both parties abandoned the theory of knowledge of defendant of insured's alleged insanity, but there is no suggestion in the briefs explaining how the pleadings could be changed in such a manner. However, defendant offered other instructions telling the jury, in effect, that plaintiff was required to put defendant *in status quo* before he could insist upon his claim of insanity on the part of insured at the time of the exchange of the certificates. It is apparent that defendant did not try the case on the theory that mere proof of insanity, without more, was all that was necessary in order to avoid the contract wherein the certificates were exchanged. [See, on this point, Perry v. Fleming, 221 Mo. App. 1071, 1088.]

The judgment is reversed. *Shain, P. J.,* concurs; *Cave, J.,* not sitting.