LEONARD MILGRAM, Respondent, v. JIFFY EQUIPMENT COMPANY, a Corporation, and FRANCES G. JACKSON, Individually and as Administratrix of the Estate of HENRY HARTLEY JACKSON, Deceased, Appellants, No. 42581—247 S. W. (2d) 668.

Division One, March 10, 1952.

Motion for Rehearing or to Transfer ·to Banc or to Modify Opinion Overruled, April 14, 1952.

Stipulation to Add Additional Parties Defendant Sustained in Per Curiam Opinion Filed, April 14, 1952.

*E. R. Morrison, John A. Morrison* and *Clark Kuppinger* for appellants; *Morrison, Hecker. Buck, Cozad & Rogers* of counsel.

*Lawrence R. Brown, Jess W. Van Ert* and *Paul R. Stinson* for respondent; *Stinson, Mag, Thomson, McEvers & Fizzell* of counsel.

CONKLING, P.J.—Jiffy Equipment Company, a corporation (hereinafter called Jiffy), and Frances G. Jackson (hereinafter called appellant), individually and in her above capacity as administratrix, have appealed from the circuit court's decree and Order of Distribution entered in an equity action wherein Leonard Milgram (hereinafter called plaintiff) sought the dissolution of Jiffy under Section 351.485 (all section references are to RSMo 1949 unless otherwise indicated) on the ground that plaintiff and appellant as equal shareholders and directors of Jiffy were deadlocked and that Jiffy was suffering irreparable damage. Plaintiff's petition prayed the court to appoint a receiver pendente lite to preserve the assets, to order the dissolution and liquidation of Jiffy, the distribution of its assets in accordance with the rights of stockholders and the appointment of a liquidating receiver to execute the court's orders effecting dissolution. Jiffy was solvent. A receiver pendente lite was appointed. It affirmatively appears that the amount here in dispute, exclusive of costs, exceeds the sum of $7500.00.

After the evidence was heard, and when the cause came before the circuit court for entry of final decree the parties agreed to dissolution, agreed that Jiffy's dissolution expenses and liabilities be paid, and agreed that Jiffy's cash and inventory should be equally divided between them. It was there further agreed by the parties that the sole remaining question before the trial court was the *manner in which* United States patent No. 2266206 (the only other asset owned by Jiffy) should be distributed to appellant and plaintiff as the only two Jiffy shareholders, the parties having agreed that all of Jiffy's assets be distributed in kind. That is the sole question upon this appeal.

Upon the above stated question, it appears that each, the plaintiff and appellant, submitted suggestions to the lower court in the form of a proposed decree. The proposed form of decree submitted by appellant, among other things, decreed that the remaining assets of Jiffy be divided in kind and distributed equally to plaintiff and appellant and that the patent owned by Jiffy "be transferred and assigned" (in accordance with Section 351.490), to plaintiff and appellant "as co-owners". Plaintiff requested the decree which the court later entered. As to the question in issue on this appeal, in the final decree as entered by the court it was ordered that, (1) the

patent in question be transferred and assigned to an individual trustee to be named by the court upon agreement of the parties, or, if they failed to agree, to be chosen by the court, (2) such trustee hold legal title to the patent on active trust for the equal use and benefit of plaintiff and appellant, on condition that all royalties and emoluments of every kind resulting from the ownership, use, license, or sale be held and distributed by the trustee equally to and for the benefit of plaintiff and appellant, and (3) such trustee be vested with full power and discretion to (a) continue or discontinue certain existing licensing agreements, (b) execute new licensing agreements for the use of the patent, (c) sell the patent, and (d) manage the operation and ownership of the patent, in such way as to the trustee be deemed for the best interests of plaintiff and appellant. Contending that the portion of the decree ordering the patent transferred to a trustee as above was void, Jiffy and Frances G. Jackson appealed from the decree and judgment entered in the trial court. This is an equity case in which we review the record de novo and give such judgment as the trial court should have given. Section 512.160, Handlan v. Handlan, 360 Mo. 1150, 232 S.W. (2d) 944.

The essential facts are as follows: The patent in question here covers the design of a certain type of standard and bracket for shelf supports. Hartley Jackson was president of Jackson Manufacturing Company, in Kansas City, which there manufactured show cases and store fixtures. Plaintiff had conceived the idea of developing a grocery shelf standard and bracket designed upon the cantilever principle. He interested Mr. Jackson in its development. Mr. Jackson was responsible for designing a certain pin which made the standard and bracket patentable. He thereafter also developed modifications of the original design, which modifications developed the article and made it more saleable. When the article was patented in 1941, the patent was issued to plaintiff and Mr. Jackson, as co-owners thereof. They thereupon formed a partnership and transferred the patent to their partnership. They had Butler Manufacturing Company make the articles. In 1946 plaintiff and Mr. Jackson organized the Jiffy Equipment Company and transferred to that corporation the patent in question and the other assets of their partnership. Plaintiff and Mr. Jackson were each issued a fifty per cent stock interest in Jiffy, and were the only two members of Jiffy's Board of Directors.

From and after the issuance of the patent, under oral agreement between plaintiff and Mr. Jackson, the Jackson Manufacturing Company was the exclusive sales and distribution agency for the patented articles, and the Jackson Company, at its plant, stored (but kept physically separate) all inventory owned by Jiffy. The Jackson Company created, published and paid for all promotional and advertising material and catalogues for Jiffy and sold the Jiffy standard and bracket to the trade. Jiffy had no employees. The Jackson

Company paid its salesman (who sold Jiffy articles exclusively) and its laborers who handled Jiffy articles, and made no charge to Jiffy for rent or utilities. One of the Jackson Company employees "is in exclusive charge of that Jiffy inventory", and he "surrenders Jiffy inventory only on written order." Jackson Company keeps a "running inventory of Jiffy inventory at all times." The Jackson Company's employees kept Jiffy's separate books for which it charged Jiffy $20 per month. That method of operation continued over the years and was approved by Jiffy's Board of Directors in April, 1948. Those minutes were signed by plaintiff and by Hartley Jackson.

· Under that method of operation the Jackson Company purchased the patented ██ articles from the Butler Manufacturing Company. The Jackson Company then sold them to Jiffy on open account. As the Jackson Company used these articles in its own manufacturing, or sold them to the trade, it bought the articles from Jiffy at what they cost Jiffy, plus 10%. The Jackson Company purchased the articles back from Jiffy only as the Jackson Company used them in its own manufactured show cases or store fixtures, or sold the Jiffy standard and bracket to the trade. Under that plan of operation the only things Jiffy owned were the patent, its inventory, its cash on hand and its accounts receivable from the Jackson Company. Jiffy's only liabilities were accounts payable to the Jackson Company, and taxes. Thus, the Jackson Company from the beginning, under oral agreement, was sole licensee of the patented devices on a royalty basis. This method of operation has been profitable to both the Jackson Company and to Jiffy. At trial time Jiffy had a $25,000 inventory. Hartley Jackson died in October, 1948 and Frances Jackson, his widow and administratrix, at trial time owned the Jackson Manufacturing Company and 50% of Jiffy's stock. After the death of Hartley Jackson, appellant Frances G. Jackson became a member of Jiffy's Board of Directors, in the place of her former husband. Business policy disputes then developed between plaintiff and appellant, as the two directors of Jiffy. The minutes of Jiffy's Board meetings in April, 1949, show they were in fact deadlocked. This action was filed in May, 1949.

The court in its final order of distribution and decree also discharged the receiver pendente lite and appointed him as liquidating receiver, ordered him to take charge of Jiffy's assets, divide Jiffy's inventory in kind between plaintiff and appellant, take receipts, pay taxes, establish certain reserves in Jiffy's bank account, transfer and assign the patent to the trustee, distribute equal portions of Jiffy's cash assets to plaintiff and appellant, and to do certain other things under the order of the court. The decree as entered ordered that after the things therein required to be done "have been performed and done" the liquidating receiver "shall apply for his final discharge" and that Jiffy "shall thereupon stand and be dissolved as a

1200

corporation." The court reserved jurisdiction to make further orders to carry out the decree.

In its decree, the court found:

"4 The court further finds that if it should order a distribution in kind of an undivided one-half interest each to the plaintiff Milgram and the defendant Frances G. Jackson, as administratrix, of the said patent, an inequitable and an unjust result would follow, for the reason that the royalties and emoluments heretofore and now enjoyed equally by said Milgram and said administratrix as stockholders of the company would thereafter inure to the sole use and benefit of said administratrix of the estate of said Henry Hartley Jackson, and plaintiff's share and interest in said royalties would terminate and end because of the peculiar nature of the interests of co-owners in a United States Patent; and the Court further finds that the interests of both of these stockholders will be equally served and preserved by an assignment and transfer of said patent to a trustee, for the equal use and benefit of the plaintiff Milgram and the defendant administratrix, on the terms and conditions hereinafter set forth."

Prior to discussion of or ruling upon the various contentions made upon this appeal it is well to here note some of the established principles within which those contentions must be considered. When a patent is owned by two or more persons, such co-owners are owners in common, or co-tenants, or tenants in common, of the right and property thereby secured. The joint owners of a patent have interests distinct and separate each from the other and, if there are but two co-owners, each of the two co-owners is invested with an undivided half interest in the entire patent. The use of a patent is unlike the use of any other personal property and the general principles applicable to the co-ownership of ordinary chattels do not apply to patents. Where there is no binding agreement as to its use between the co-owners of a patent, each co-owner may manufacture, use, license or dispose of his interest in the patent without the consent of the co-owner, and without having to account to the co-owner for profits. Each co-owner may himself use the whole of the invention as he wishes, or he may grant a non-exclusive license to outsiders to use it, and may then retain the proceeds and profits thereof. Drake v. Hall, 220 Fed. 905, 48 C.J. Patents, p. 237, 239, 69 C.J.S. Patents, p. 732, 733, Talbot v. Quaker-State Oil Refining Co., 104 Fed. (2d) 967. Where a co-owner of an invention uses it in a lawful way, he does not thereby appropriate or use anything which belongs to the other co-owner. The lawful use by one co-owner leaves unaffected the separate rights of the other co-owner. Such other co-owner is equally free to make any lawful use of the invention for his individual profit. Each are entitled to all they can lawfully make from it. Blackledge v. Weir & Craig Mfg. Co., 108 Fed. 71. The

law permits more than one person to own the same patent. But the law will not divide the *use* of a patent into fractional parts. To do so might often wholly destroy its *use* and then no public benefit would flow from the existence of the invention. Each owner therefore has an undivided interest in the whole of it and each owner may use the whole of it. One who is only a co-owner of a patent cannot grant an exclusive license for its use, nor can he forgive an infringement of the patent. Authorities, supra.

Prior to the enactment of the above Section 351.485, the courts were without equitable jurisdiction to decree dissolution of a corporation and distribute its assets. Schneider v. Schneider, 347 Mo. 102, 146 S.W. (2d) 584, 589 (1940), State ex rel. Kansas City, Missouri, Nav. Co., et al. v. Dew, 312 Mo. 300, 279 S.W. 65, State ex rel. Donnell, et al. v. Foster, 225 Mo. 171, 125 S.W. 184. But by the enactment of Section 351.485 equity courts were granted full power in Missouri to decree dissolution and to liquidate the assets of a business corporation when the directors thereof are deadlocked and the corporation is suffering or threatened with irreparable injury. Handlan v. Handlan, supra.

The power of the court to dissolve the corporation (under the instant circumstances) stemming from the Code on General and Business Corporations, which was enacted in 1943, and from Section 351.485, therein, and the statutory procedure for such dissolution and the distribution of the corporate assets being set out in said Chapter 351, and in Section 351.490 thereof, the courts must comply with those provisions as found in Chapter 351. The remedy and procedure under a newly-created statutory right must follow the procedure outlined in such statute. That procedure is preclusive, there being no other procedure than in the statute itself. Mennemeyer v. Hart, 359 Mo. 423, 221 S.W. (2d) 960, Carlisle v. Mo. Pac. Ry. Co., 168 Mo. 652, 68 S.W. 898, Stanton v. Thompson, 234 Mo. 7, 136 S.W. 698. An eminent text writer states that: "There are in most of the states statutes relating to the dissolution and winding up of corporations. In general they enumerate the grounds for forfeiture or dissolution, and provide the method of accomplishing the same; which method is ordinarily exclusive." 16 Fletcher Cyclopedia Corporations, Perm. Ed. § 7977, p. 666. The very enactment of a statute providing specific procedure in the liquidation of a corporation and the distribution of its assets evidences a legislative intent that the procedure therein is to be exclusive.

As to the procedure to be followed by the court upon liquidation of a corporation and as to the distribution of the corporate assets upon such liquidation, the procedure therefore is particularized in the general corporation code, in Chapter 351 of our statutes, and in Section 351.490. It is there provided in subsection 3, in part, that: "The assets of the corporation or the proceeds resulting from a sale, convey-

ance, or other disposition thereof shall be applied to the expenses of such liquidation and to the payment of the liabilities and obligations of the corporation, and *any remaining assets or proceeds shall be distributed among its shareholders according to their respective rights and interests."* (Emphasis ours.) Likewise, it is provided in Section 351.510, respecting the "Decree of Dissolution" that where the corporation ▆▆▆ is solvent, its liabilities shall be first discharged "and *all of its remaining property and assets* distributed to its shareholders" and that the court shall then enter a decree of dissolution.

▆▆▆ Appellant contends that the above statutes as to distribution of assets *must be followed,* and the "remaining" corporate assets, including the patent, must be distributed to Jiffy's shareholders, plaintiff and appellant, as co-owners. On the other hand, plaintiff contends that "the trial court has inherent power to appoint a trustee or adopt any other measure to secure an equal and equitable distribution of Jiffy's assets." Therefore, the *sole* question here presented for our ruling is, did the lower court err in decreeing that the patent be transferred to a trustee to "manage and operate" in any way, "by him (the trustee) deemed for the best interests of the beneficial owners thereof."

Plaintiff cites many cases upon the principle that in receivership cases, the receivership estate is in custodia legis and that in the disposition of a receivership estate it is the court's duty to handle such estate "in such a way as will best serve the interests of all parties concerned". The rule of the many cases cited by plaintiff upon that point may be conceded. Plaintiff states in his brief, "\* \* \* it was both the prerogative and the willing duty of the trial chancellor *in this receivership case* to dispose of the property for the equal benefit of all those having an interest in it." (Emphasis ours.)

But this is not a receivership case. There is no such thing as a pure receivership case. An equity court may appoint a receiver only when the appointment is ancillary to a pending action. This is a case of the statutory dissolution of a corporation. And while as a means to an end the appointment of a receiver (both pendente lite receiver and a liquidating receiver) was prayed, and made, receivership was not the relief sought and was not, and could not be, the objective of the litigation. The receivership was only incidental, ancillary to and allowable in, and in connection with the statutory dissolution action. Sections 351.485 and 351.490. The appointment of the receiver was merely in aid of dissolution, the receiver being merely a portion of the machinery the court was allowed to use to effect dissolution. The receiver was allowed by the dissolution statute, but receivership was not the end and purpose of the litigation. This action sought statutory dissolution under Section 351.485, as declared in plaintiff's petition. Sections 351.485, 351.490, State ex rel. Kopke v. Mulloy, Judge, 329 Mo. 1, 14,

43 S.W. (2d) 806, Monticello Bldg. Corp. v. Monticello Inv. Co., 330 Mo. 1128, 52 S.W. (2d) 545.

█ In justification of the court's decree in ordering the patent transferred to a trustee with "power to manage the operation and ownership of said patent", plaintiff says "the trial court had inherent power to appoint a trustee * * * to secure an equal and equitable distribution of Jiffy's assets". Plaintiff argues that the patent "is under the dominion of the court, with *absolute* power (in the court) to deal with it", etc. To that we do not agree. Plaintiff's brief seems to base his entire position upon the trial court's general equity powers. Plaintiff argues in support of the above quoted paragraph 4, and other decretal portions of the decree respecting the proposed trustee, that, "for practical purposes all future value in the patent is wrapped up in the license agreement with Jackson" because for ten years (plaintiff argues) the Jackson Company was the sole licensee and sales outlet; that by years of promotion the Jackson Company built a large clientele, created a demand for the patent and has "appropriated" the distribution field, "and probably the whole future value of the patent"; that plaintiff is as much entitled to share the future royalties (for the remaining 7 years of the life of the patent) as he was entitled to share the past royalties; and that the decree as entered insured plaintiff an equal share with appellant. Thus plaintiff asserts what he conceives to be his equities and thus he relies on the general equity powers of the court as to the appointment of a trustee. But we are not so persuaded. █ We examine the above claimed equities.

If the Jackson Company was for ten years the sole licensee and sales outlet of the patented articles, it was upon plaintiff's agreement that such relationship came first into being and was thereafter continued; and if the Jackson Company *at its own expense,* promoted the article, built a clientele and created a demand for it, that was at no expense to plaintiff, but plaintiff, as half owner of Jiffy, shared in those ten year royalties and earnings of Jiffy. The Jackson Company did not "appropriate" the distribution field, it was the sole licensee and sales outlet by virtue of, and only because of, plaintiff's agreement. It was upon plaintiff's petition and prayer, and at the instance of plaintiff that the dissolution of Jiffy was decreed. By his action plaintiff sought the destruction of Jiffy. In his action, wherein he accomplished that destruction, plaintiff seeks *by this decree to save for himself the rights which he himself sought to destroy.* Does a goose lay golden eggs after it is dead?

And now, under the guise of equity and equality, plaintiff proposes to retain his former royalties received as half owner of Jiffy, and (without cost to himself) share in whatever future profits, if any, Frances G. Jackson might make *by reason of her ownership of one-half of the patent.* If the patent be transferred to plaintiff and appellant

as co-owners thereof, plaintiff himself will be at entire liberty under the law, to himself manufacture the patented article, or to use it, or license others to manufacture, use and sell it, or he may dispose of his interest in the patent, and retain all the proceeds and profits thereof for *his* own use. We do not see any equities in plaintiff's favor, nor do we see any force in plaintiff's position. Plaintiff seeks to invoke the maxim that "Equality is equity". But no maxim of equity may be invoked to destroy an existing legal right, nor may equity purport to establish a right which does not exist. Under the instant circumstances not even a court of equity may take from either plaintiff or appellant their statutory right to have the patent transferred to them "as co-owners", and, ignoring that right, vest legal title to the patent in a trustee with power to "manage" or to effect a "sale" of the patent. Even if a court of equity could under these circumstances (*and we rule it cannot*) transfer the patent to a trustee, such trustee could not sell the patent. For the trustee to sell the patent would thereby take from plaintiff and from appellant their property without their consent under such circumstances as would amount to confiscation, and would violate due process.

In this case the receivership was only ancillary to the action for corporate dissolution in any event, and such a receivership may not be continued and carried on through the next seven years, or at all, under the name and guise of a trusteeship. See annotation, 43 A.L.R. 316, 317. The trustee would be no more and no less than a perpetual receiver under a different name.

Assume, for example, that one of the two co-owners of a patent (without regard to which one) might possess the ingenuity and business capacity to so use his property right as co-owner of an invention as to make a million dollars from it, and that the other co-owner might possess only the ingenuity and business capacity to so use the same property right as co-owner of the same invention as to make only a hundred dollars from it in the same length of time. No principle of law or equity authorizes the courts by indirection, or otherwise, to so take over those two co-owners in litigation and compel them to pool and divide their potential combined financial returns from their invention. The courts may not effectuate that result by ordering a trustee to operate their invention, or in any other manner. The co-owners may pool and divide upon their own agreement. But the courts lack the power to compel them to do so. For the courts to take from A (one co-owner) that which he can earn from an invention by his own ingenuity, by compelling him to pool and divide with B (a co-owner of A's invention) would be but the judicial division of wealth, the judicial equalization of earning power and income, and would be judicial confiscation. The courts are without any jurisdiction to venture into that field.

Plaintiff seems to argue that the court had inherent power to and did create a resulting trust by operation of law and had power to provide for a trustee to hold the title and operate the invention; that the patent is under the *dominion* of the court which has *absolute power* over it; and that many trusts are created inter vivos by the person who has dominion over the property. Plaintiff cites Sanford v. Van Pelt, 314 Mo.175, 282 S.W. 1022. That case does not support plaintiff. It is stated in Scott on Trusts, p. 2163, Sec. 404.1, that: "A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have a beneficial interest in the property. * * * There are three situations in which the trust which arises is properly called a resulting trust: (1) where an express trust fails in whole or in part; (2) where an express trust is fully performed without exhausting the trust estate; (3) where property is purchased and the purchase price paid by one person and at his direction the vendor conveys the property to another person." Fraud is an essential element of a constructive trust. There are no elements of either a resulting trust or a constructive trust in the action of any of the parties here. Equity cannot create a trust where the parties did not intend to do so, and where none arose by operation of law.

We return to the requirements of Section 351.490, supra. It is there provided that after the expenses of liquidation and the liabilities of the corporation are paid, that, "any *remaining* assets or proceeds *shall be distributed among its shareholders according to their respective rights and interests.*" The last above quoted "shall" is not merely permissive. It must be construed to be mandatory. It is a requirement of affirmative action which the statute does not qualify after the expenses of liquidation and existing corporate liabilities shall have been paid. In this case there is no such priority question. The decree of the court ordered dissolution, payment of Jiffy's liabilities, and distribution of all assets other than the patent. Upon dissolution and payment of expenses and corporate liabilities, title to corporate assets vests automatically in the shareholders. Their right to then receive the remaining corporate assets is absolute. Section 351.490, Avery v. Central Bank of Kansas City, 221 Mo. 71, 119 S.W. 1106, 16 Fletcher Cyclopedia Corporations, § 8134, p. 878, 13 Am. Juris. Corporations, § 1352, In re Midwest Athletic Club, 161 Fed. (2d) 1005, Pontiac Trust Co. v. Newell, 266 Mich. 490, 254 N.W. 178. And a shareholder may sue at law and recover his proportionate share of the corporation's assets. Wittich v. Wittich. (Mo. App.) 263 S. W. 1001. The statute is unambiguous, and the shareholders' right to distribution of "any remaining assets" under the circumstances stated in the statute, and which obtain here, is unqualified. We rule that it is made mandatory by sub-section 3 of Section 351.490, that

1206

*all remaining* corporate assets "shall be distributed among its shareholders." And this must include the patent in issue here.

A court of equity, no more than a court of law may act upon its own conceptions of what is right in a particular case, for established rules and precedents are equally binding upon both law and equity courts; and where the rights of parties litigant are clearly defined by statutes, legal principles and precedents those statutes and legal principles may not be unsettled or ignored. And not even a court of equity has any discretion as to what the law may be. Sell v. West, 125 Mo. 621, 28 S. W. 969, Linville v. Ripley, 237 Mo. App. 1275, 173 S.W. (2d) 687, 19 Am. Juris., Equity, §§448, 454, pp. 310, 313, 314, 30 C.J.S., Equity, § 1, York v. Trigg, 87 Okla. 214, 209 Pac. 417, Byers v. Security Ben. Soc., (Mo. App.) 147 S.W. (2d) 116, 1 Pomeroy's Equity Judisprudence, § 47, Mavrakos v. Mavrakos Candy Co., 359 Mo. 649, 223 S.W. (2d) 383. Equity courts may not disregard a statutory provision, for where the Legislature has enacted a statute which governs and determines the rights of the parties under stated circumstances, equity courts equally with courts of law are bound thereby. "Equity follows the law more circumspectly in the interpretation and application of statute law than otherwise". Giberson v. First National Bank, 100 N.J. Eq. 502, 136 Atl. 323, 19 Am. Juris., Equity, § 454, Hedges v. County of Dixon, 150 U.S. 182, 14 S. Ct. 71, 37 L. Ed. 1044, 1049.

So, while in this case the circuit court was sitting as a court of equity and exercising equity powers and jurisdiction, it could not by-pass the plain provisions of sub-section 3 of Section 351.490, and, under these circumstances, undertake by judicial fiat to set up a trust as to the patent, and effect a continuing receivership, for the express legislative enactment in that section requires the "remaining" assets of the corporation to be distributed to the shareholders. The lower court erred in including in its decree those portions thereof providing for a transfer of the patent in question to a trustee and for the future ownership, use, licensing, sale or management thereof by a trustee.

For reasons above stated the decree and order of distribution entered in the court below is modified by striking therefrom paragraph 4 of the findings, above quoted, and by striking therefrom and eliminating the provisions thereof contained in paragraphs (a), (b) and sub-paragraph (2) of paragraph (c), and all portions of said judgment and decree providing for a transfer of said patent to a trustee and for the future ownership, use, licensing, sale or management thereof by a trustee. Said decree is further modified by inserting therein a provision to require the liquidating receiver to transfer and assign said United States Patent No. 2266206 to the plaintiff, Leonard Milgram and Frances G. Jackson, as co-owners thereof. As so modified the Order of Distribution, decree and judgment entered below is affirmed. It is so ordered. All concur.

■ PER CURIAM:—Since the above opinion was filed Leonard Milgram and Frances G. Jackson have filed in this cause in this Court their stipulation:

(1) That Frances G. Jackson was appointed by the Probate Court of Jackson County, Missouri, as Guardian and Curator for the person and estate of Elizabeth Carroll Jackson and also for the person and estate of Henry Hartley Jackson, Jr., her minor children, on February 3, 1949;

(2) That by order dated June 28, 1951, Mrs. Frances G. Jackson was discharged by the Probate Court of Jackson County, Missouri, as Administratrix of the Estate of Henry Hartley Jackson, Deceased, and the shares of the capital stock of the Jiffy Equipment Company, an appellant herein, held by her as Administratrix were ordered distributed and are presently owned, as follows: 14 shares by Frances G. Jackson, Guardian and Curator of the person and estate of Henry Hartley Jackson, Jr.; 14 shares by Frances G. Jackson, Guardian and Curator of the person and estate of Elizabeth Carroll Jackson, and 22 shares by Frances G. Jackson, individually;

(3) That Frances G. Jackson as Guardian and Curator of the person and Estate of Henry Hartley Jackson, Jr., and Frances G. Jackson, as Guardian and Curator of the person and Estate of Elizabeth Carroll Jackson, be added to this action as parties defendant;

(4) That the above opinion of this Court and our judgment in this cause be modified to provide for distribution of the assets of the Jiffy Equipment Company to Leonard Milgram, Frances G. Jackson individually, and Frances G. Jackson as Guardian and Curator of said estates in accordance with their respective ownership of the capital stock of said corporation.

In accordance with said stipulation our opinion heretofore filed and our judgment herein are so modified.