CITY INVESTING COMPANY and Glendale Farms, Inc., Plaintiffs-Appellants,

v.

Blevins DAVIS, Floyd R. Brown, Jr., and John Sandusky, Defendants-Respondents.

No. 47945.

Supreme Court of Missouri,

Division No. 1.

March 14, 1960.

Motion for Modification of Opinion or for Rehearing Denied April 11, 1960.

Ralph M. Jones, Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, for plaintiffs-appellants.

Fenton Hume, John G. Killiger, Kansas City, for appellant, C. W. Jones.

Roy K. Dietrich, Heywood H. Davis, Dietrich, Tyler, Davis, Burrell & Dicus, Kansas City, for appellant Moseley & Co.

Robert L. Jackson, Kansas City, and Harvey B. Burrus, Independence, for respondent, Blevins Davis.

HYDE, Presiding Judge.

This case began as an action to foreclose a chattel mortgage securing a debt of $401,639.79, for which amount plaintiff City Investing Company (hereinafter called City) asked judgment. Defendant Davis filed an answer denying all allegations concerning the debt and chattel mortgage with a counterclaim in four counts alleging in Count I an agreement between Davis and City to develop 400 acres in Jackson County owned by Glendale Farms, Inc. (hereinafter called Glendale), incorporated by Davis, pursuant to which defendant placed all the Glendale stock in trust with City and claiming $500,000 actual and $500,000 punitive damages for fraudulently depriving Davis thereof. Count II asked $100,000 for serv-

ices alleged to have been performed by Davis. Count III sought $625,000 for alleged profits made by City from sale of the land. Count IV claimed equitable ownership of the Glendale stock and sought injunctive relief to prevent disposition of the stock or the land by City and determination of the ownership of the stock and the land.

City then obtained leave to make Glendale a party plaintiff and Brown and Sandusky defendants, as tenants of part of the land, and in a counterclaim in ejectment sought possession of the land from the three defendants. In a second counterclaim, it was stated that Glendale had contracted to sell the land and an injunction was sought to restrain Davis from interfering with the completion of the sale and transfer of the land to the purchaser. Davis filed answer to these counterclaims alleging the chattel mortgage had been obtained by fraud and asking that it be cancelled, filed other counterclaims seeking increased amounts of damages based on alleged violation of the claimed agreement to jointly develop the land for business, residential and industrial uses, and asked for a decree taking title to the land from Glendale and declaring it to be returned to him. All of these claims and counterclaims were tried together and considered as converting the entire matter to an equity case.

City and Glendale have appealed from the decree entered which, although finding against Davis on all of his counterclaims, ordered the land subjected to an equitable first mortgage lien to secure the payment of three notes held by City ($150,000, $50,000, and $175,000) and expense of $21,793.81 advanced and impressed on the personal property, covered by the chattel mortgage, a first lien to satisfy any deficiency; and appointed a commissioner to sell the land. The decree also provided that, if the proceeds of the sale satisfied the equitable lien of City and costs, any balance together with the personal property should be returned to Davis. After this decree was entered, C. W. Jones, purchaser of the land

from Glendale and Moseley & Company, the real estate broker negotiating the sale, sought to intervene; and, when intervention was denied, also appealed.

The findings of facts in the decree with which City and Glendale agree or which we find to be fully supported by the evidence are as follows:

"On December 14, 1956, defendant Blevins Davis in consideration of the receipt of the sum of $150,000.00 made, executed, and delivered his negotiable promissory note in the principal sum of $150,000.00 with interest thereon at the rate of five per cent per annum to plaintiff City Investing Company. Coincidentally therewith defendant Blevins Davis executed and delivered to plaintiff City Investing Company a letter whereby said defendant in consideration of the receipt of said sum and as an inducement to City Investing Company to make such loan, promised and agreed that within thirty days thereof he would execute and acknowledge a first mortgage in favor of said City Investing Company or its nominee on certain farm premises consisting of approximately 400 acres of land located in Independence, Missouri, to secure the repayment of said $150,000.00, said letter warranting that said 400 acres of land was free and clear of all liens and incumbrances, and said letter expressing the understanding of defendant Blevins Davis that said City Investing Company, in making such loan, relied upon the representations contained in said letter with respect to ownership of said farm and its freedom from liens.

"Thereafter and on March 6, 1957, defendant Blevins Davis, in consideration of the receipt of the additional sum of $50,-000.00, made, executed, and delivered his certain negotiable promissory note payable to City Investing Company or order in the principal sum of $50,000.00 bearing interest at the rate of five per cent per annum. Coincidentally therewith said defendant Blevins Davis executed and delivered a letter directed to City Investing Company

wherein he promised and agreed to promptly execute and acknowledge a first mortgage in favor of said City Investing Company or its nominee on the same farm premises, to secure the repayment of said additional sum of $50,000.00, and repeating the warranties and understandings of said defendant Davis contained in said first letter of December 14, 1956.

"In truth and in fact the legal title and ownership in and to said 400 acres of land was in Glendale Farms, Inc., a Missouri Corporation, wholly owned by said defendant Blevins Davis, and in truth and in fact upon the dates of the execution of said notes and letters of December 14, 1956 and March 6, 1957 said 400 acres of land was incumbered by a first deed of trust securing a negotiable note in the principal sum of $175,000.00 bearing interest at the rate of five per cent per annum payable to Home Federal Savings & Loan Association of Kansas City or order and executed by Glendale Farms, Inc., by Blevins Davis, President, and by Blevins Davis, individually, said note and deed of trust both being dated August 28, 1956 and said first deed of trust having been filed for record in the office of the Recorder of Deeds of Jackson County, Missouri, on said date.

"On May 23, 1957 said note in the principal sum of $175,000.00 was in default and the said deed of trust securing the same was in the process of foreclosure under its terms and the laws of Missouri.

"On May 23, 1957 defendant Blevins Davis executed and delivered a letter to City Investing Company reciting (among other things) that as an inducement to City Investing Company to purchase said note in the principal sum of $175,000.00, and as security for the same and said two earlier notes the principal sums of which totaled $200,000.00, he, the said defendant Belvins Davis, did thereby sell, assign, and transfer five shares of capital stock of Glendale Farms, Inc., a Missouri corporation, which he, the said Davis, represented to be all of the issued and outstanding shares of stock of that corporation, and five (5) shares of the capital stock of Midwest Continental Corporation, a Missouri corporation, and by said letter said defendant Blevins Davis did further covenant and agree that upon the nonpayment of the principal of or interest on any or all of said notes, plaintiff City Investing Company in its sole discretion, without further demand, advertisement or notice of any kind, was authorized to sell, assign and deliver the whole or any of said capital stock at any time or times at private sale and at such price or prices as in the sole discretion of said City Investing Company it might deem satisfactory; that thereupon said plaintiff City Investing Company did purchase said note in the principal sum of $175,000.00 at a cost, including interest thereon accrued to the date of such purchase and costs, ($267.35), incidental to such purchase, of $181,748.99; that * * * on the 23rd day of May, 1957, defendant Blevins Davis by John W. Starr and George L. Gordon, his attorneys in fact, did make, execute and deliver chattel mortgage in favor of plaintiff City Investing Company covering all tangible personal property owned by said defendant Davis and situated on or in said 400-acre farm to secure payment of said three notes, and on the 7th day of November, 1957, said defendant Davis did make, execute and deliver a supplement to said original chattel mortgage wherein said tangible personal property was particularly described, said supplement to said original chattel mortgage being filed of record in the office of the Recorder of Deeds of Jackson County, Missouri, November 13, 1957.

"To the date of trial herein, plaintiff City Investing Company advanced the sum of $22,401.46 to defray necessary expense in maintaining and preserving said 400 acres of land and improvements thereon and during said period received income therefrom in the sum of $875.00.

"The relationship between defendant Davis and the president of plaintiff corporation City Investing Company was based on many years of personal and social

friendship. The initial two loans made by City Investing Company to Davis were handled between the parties in an informal manner and not as arms-length commercial transactions.

"At all times referred to in plaintiffs' petition and counterclaim and defendant Davis' counterclaim and cross-claim it was the clear intention of plaintiff City Investing Company and defendant Blevins Davis that plaintiff City Investing Company should have security for the payment of said notes in the form of a first mortgage lien covering said real estate and in addition thereto in the form of a chattel mortgage covering said personal property. It was further the clear intention of the parties that said City Investing Company should recover any and all lawful costs and expense in connection with said transactions. * * *

"By his acts and conduct in executing and delivering said letters to City Investing Company dated December 14, 1956 and March 6, 1957, defendant Blevins Davis wrongfully, unlawfully, and fraudulently did induce plaintiff City Investing Company to make said two initial loans totaling $200,000.00, and by his acts and conduct in executing and delivering said letter of May 23, 1957 and in delivering said stock certificates of Glendale Farms, Inc., to plaintiff City Investing Company, defendant Blevins Davis did encourage and induce said City Investing Company to purchase said promissory note in the principal sum of $175,000.00."

Further important facts are that on March 6, 1958, City sold at public auction the Glendale stock Davis had pledged on May 23, 1957, as additional security for his debts to City. The evidence shows that Davis was given more than 30 days' personal notice of this sale to foreclose his pledge and that it was advertised by two publications in the New York Journal of Commerce. The only bid was for $20,-000.00 made by City and this amount, less costs of sale, was credited on the first Davis

note. In its decree the court found that this amount was "a wholly inadequate consideration"; and further found that "defendant Davis' equity in said real estate and personalty was substantially in excess of said defendant's obligation to plaintiff City Investing Company"; and that "City Investing Company's acts, conduct, claims and procedures evidence a studied effort to recover far in excess of any lawful or equitable claims it may have against defendant Davis and by such acts, conduct, claims and procedures does not seek to do equity." However, the decree did not set aside the foreclosure sale of the Glendale stock but ignored it. Wild claims made in the Davis pleadings are not even supported by his own testimony; but it does appear from his testimony and the testimony of his friend Dowling, president of City, that, when Davis pledged his Glendale stock and made the chattel mortgage, there was an understanding between them that Davis would work with City to arrange for sale or development of the land for the purpose of paying all of his debt to City and dividing any balance in excess thereof between Davis and City. (Development of property, especially for industrial purposes, was a part of City's business.) It also appears that Davis was permitted to continue his efforts for that purpose for more than a year after the sale of the pledged Glendale stock; and that it was not until April 1959, after defeat of a racing bill in the Missouri Legislature for which Davis was working with a view to having a race track established on the land, that City and Glendale made the contract to sell the land to Jones, first notifying Davis that they intended to do so. Of course, Davis could have gained nothing and there would have been no reason for his efforts to try to get the highest possible price for the land or even to try to find a buyer, if he was not to receive even a credit on his debt for the amount the land brought above the amount of the first mortgage.

■ In connection with the foreclosure sale of the pledged Glendale stock, it is

also argued that there were ten shares outstanding; that only five were pledged and sold; and that, therefore, City did not have the controlling interest so that all its acts in electing new officers and directors and contracting to sell the land to Jones were invalid for lack of a quorum to transact corporate business. However, the May 23, 1957 pledge of the stock by Davis stated that "I hereby sell, assign, and transfer to you the following: Five shares of capital stock of Glendale Farms, Inc., a Missouri corporation, representing all of the issued and outstanding shares of stock 'of that Corporation, and represented by certificates as follows: * * * (describing Certificates 1, 2 and 3, the first for three shares and the others for one each) * * * all of which stock is owned beneficially by Blevins Davis." Thereafter, the records of the Corporation containing its minutes and its stock certificate book were delivered to City's attorneys, who on finding in the book certificate No. 4 for five shares, made out to Davis, sought information about it; and they received a letter dated June 11, 1957 from the Secretary of Glendale (who had been the Secretary throughout its existence and also attorney for Davis in incorporating it) stating: "Pursuant to your letter of May 27th last, this is to confirm the fact that Stock Certificate No. 4, dated January 8, 1953, of Glendale Farms, Inc., in the name of Blevins Davis, for five shares of Common Stock, was never issued or delivered but remained at all times in the Stock Book of this corporation until its delivery and receipt by Mr. T. W. Hutchason, Vice President of Commerce Trust Company on May 23rd last." Also in his deposition, Davis testified that it was his intention to give City all the stock of Glendale to secure his debt; and he did not contradict this at the trial. Under these circumstances, we must hold that Davis now is estopped from claiming there were more than five shares of Glendale issued and outstanding.

█ It is at once apparent that the rights of Jones, as purchaser of the land, could not be adjudicated, or taken from him by the decree, when he was not a party to the suit. He should have been brought in as soon as his interest appeared (Sec. 507.030; statutory references are to RSMo and V.A.M.S.); and the court had no authority to enter the decree it did, disposing of his rights, without having made him a party. See Schaeffer v. Moore, Mo.Sup., 262 S.W.2d 854, 858; School Dist. No. 24 of St. Louis County v. Neaf, 347 Mo. 700, 148 S.W.2d 554; Riggs v. Moise, 344 Mo. 177, 128 S.W.2d 632; State ex rel. North St. Louis Trust Co. v. Wolfe, 343 Mo. 580, 122 S.W.2d 909; State ex rel. Bevan v. Williams, 316 Mo. 665, 291 S.W. 481. If it never became apparent that his rights would be affected until the decree was entered, he had the right to intervene under Sec. 507.090, subd. 1(2), which we think should have been sustained. See Moore's Federal Practice, Sec. 24.13(1); State ex rel. Duggan v. Kirkwood, 357 Mo. 325, 208 S.W.2d 257, 2 A.L.R.2d 216. In passing, although not important because of the view we take, we say the court did not abuse its discretion in refusing intervention after the decree to Moseley & Company, whose interest was collection of commission for making the sale to Jones, because we consider it could come only under the permissive intervention provisions of Sec. 507.-090, subd. 2(2).

█ Jones' contract with Glendale was to purchase the land for $500,000 to be reduced by $15,000 if Glendale could not deliver certain described personal property, and included all of the Davis farm and a small adjoining tract (30 acres) which Glendale had purchased for $24,000 to add to it. We are not impressed with the testimony of a greater value given by witnesses for Davis, finding it speculative and unconvincing as being based too much on prospective profits of developers and builders. The trial court made no finding on the value of the land, finding only that Davis' equity in the real estate, together with the mortgaged personal property, was substantially in excess of his debt. Our conclu-

sion is that the amount which Jones contracted to pay (in excess of $1,000 per acre) was a reasonable price close to its reasonable market value, which we believe was properly estimated by plaintiffs' witnesses, considering the size of the tract, its location, physical characteristics and means of access. However, plaintiffs seek equitable relief and seeking equity must do equity. (One of plaintiffs' grounds was that Davis' "counterclaims and separate suit are a deliberate attempt to block the sale of said property which, if successful, will cause irreparable damage both to these plaintiffs and the buyer; that such conduct constitutes illegal interference with contract and slander of title, for which he would be responsible in damages, but being financially irresponsible, plaintiffs' remedies at law are totally inadequate.") "By appealing to the equitable jurisdiction, the complainant is deemed to have submitted himself to the court's decision as to what is necessary to do justice to the defendant as determined in the light of equitable principles." 19 Am.Jur. 320, Sec. 463; see also 30 C.J.S. Equity §§ 90–92, pp. 458–475; 2 Pomeroy's Equity Jurisprudence 51, Secs. 385–388; Milanko v. Austin, 362 Mo. 357, 241 S.W.2d 881, 884, and cases cited. However, "the equity of the defendant must exist in fact, and it must be that of which the law takes cognizance." 19 Am. Jur. 323, Sec. 468; see also Milgram v. Jiffy Equipment Co., 362 Mo. 1194, 247 S.W.2d 668, 675, 676, 30 A.L.R.2d 925, and cases cited. Nevertheless, "the rule may apply, and under its operation an equitable right may be secured or an equitable relief awarded to the defendant which could not be obtained by him in any other manner,—that is, which a court of equity, in conformity with its settled methods, either would not, or even *could* not, have secured or conferred or awarded by its decree in a suit brought for that purpose by him as the plaintiff." 2 Pomeroy 57, Sec. 386a; author's emphasis.

Upon these principles we think it equitable, just and proper, as a condition for the relief plaintiffs seek, to require City to credit on Davis' debt the amount received by Glendale (which is completely owned by City) for the Davis land in excess of the first mortgage debt, net expenses of maintenance, expenses of sale including the real estate commission, and expenses of this litigation including reasonable attorneys' fees. We confirm title to City to the Glendale stock acquired at the foreclosure sale but instead of the $20,000 credit then made require the credit of the proceeds of the sale of the land less the above-stated deductions. We do this because we conclude Davis was reasonably led to believe by City's officers that, if he made the pledge and chattel, City would cooperate with him to develop or sell the land; that in case of sale he would get the full benefit of the proceeds as a credit on his debt; that this understanding continued after City got title to the Glendale stock by foreclosure; and that Davis was permitted and encouraged to act on it until April 1959. The allowance of such a credit to Davis will permit City to collect its entire debt, interest and expenses and will only prevent them from making a profit in addition thereto.

The judgment and decree is reversed and the cause remanded with directions to enter a decree adjudging the amount of the debt and interest due from Davis to City, determining the amount to be credited on the debt from the proceeds of the sale of the land after making the deductions for hereinabove specified expenses, requiring possession of the land be given to Glendale, providing for foreclosure of the chattel mortgage within a reasonable time to be fixed by court to pay any balance due on the debt of Davis after making the authorized credit and making such other orders as may be necessary in accordance with the rulings herein made.

All concur.