932 F.2d 981
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
CONTINENTAL AMERICAN CORPORATION, Plaintiff-Appellant,
v.
Leslie BARTON, Container Technologies, Inc., John C. Davis
and Stephen M. Merrick, Defendants-Appellees.
 No. 90-1509.
 United States Court of Appeals, Federal Circuit.
 April 30, 1991.
Rehearing Denied May 28, 1991.
 
 Before RICH, MAYER and CLEVENGER, Circuit Judges.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 Continental American Corporation (CAC) appeals from the August 7, 1990 Final Judgment of the United States District Court for the Northern District of Texas, CA 3-84-0596-T, holding, inter alia, that CAC does not have an exclusive license under United States Patent No. 4,077,588. We affirm the judgment in all respects.
 
 OPINION
 
 2
 Section 262 of Title 35, United States Code, provides:
 
 
 3
 In the absence of any agreement to the contrary, each of the joint owners of a patent may make, use or sell the patented invention without the consent of and without accounting to the other owners.
 
 
 4
 Section 262 was a new provision in the Patent Act of 1952 codifying the law of a long line of cases. See 35 USCA 262 (West 1984) (Reviser's Note); R. Ellis, Patent Assignments and Licenses Sec. 171 (2d ed. 1943) (Ellis) and cases cited therein. Courts have also held that a joint owner may grant licenses (of his share) to third parties without the consent of the other joint owners, and without having to account for royalties received. See Milgram v. Jiffy Equip. Co., 247 S.W.2d 668, 673, 92 USPQ 436, 439 (Mo.1952) ("Each co-owner may himself use the whole of the invention as he wishes, or he may grant a non-exclusive license to outsiders to use it, and may then retain the proceeds and profits thereof."); Ellis at Secs. 171, 473 and cases cited therein.[1]
 
 
 5
 Equally well established is the self-evident concept that a joint owner of a patent cannot grant to a third party greater rights than the joint owner himself possesses. See, e.g., Dunham v. Indianapolis & St. Louis R.R. Co., 8 F.Cas. 44 (N.D.Ill.1876) ("it is clear that one of the patentees cannot grant what does not belong to him, and if he gives a license or makes a contract for the use of the thing patented, he can only grant that which he has himself, and not the rights of the other patentees...."); W. Robinson, The Law of Patents Sec. 773 (1890) ("the owner of an undivided interest can convey only that undivided interest"). Accordingly, the general rule has been that a grant of an exclusive right to practice the patented invention, which grant is greater in scope than what a single joint owner possesses, cannot be made by that single joint owner, and instead requires the consent of all joint owners. See Blackledge v. Weir & Craig Mfg. Co., 108 F. 71 (7th Cir.1901), wherein the court stated:
 
 
 6
 The use of an invention by one of co-owners or by his licensees is not the exercise of the entire monopoly conferred by the patent. That can be effected only by the joint or concurrent action of all owners. The separate action of any one owner or of his licensees can be an exercise or use only of his individual right, which, though exclusive of all besides, is not exclusive of the other patentees, their assignees or licensees.
 
 
 7
 Id. at 76 (emphasis added). See also Ellis at Sec. 86 ("The general rule is that where the legal title is held jointly the entire title can be transferred only by an assignment executed by all the owners.")
 
 
 8
 This case presents a novel twist to the general rule. Citing Rail-Trailer Co. v. ACF Industries, Inc., 358 F.2d 15, 16-17 (7th Cir.1966),[2] CAC contends that 35 USC 262, by its recognition that joint owners may make an "agreement to the contrary," permitted Barton to agree in advance that Hurst could grant an exclusive license to a third party, thereby barring both Barton and Hurst from practicing the patented invention, without again obtaining Barton's express consent. CAC further contends that if such an agreement were oral, it would not necessarily be inconsistent with the requirement of 35 USC 261 that assignments be in writing. Thus, CAC argues, when 35 USC Secs. 261 and 262 are read together, there is no indication that a written assignment would necessarily "supersede" an oral agreement between joint owners that gives one joint owner the right to independently grant an exclusive license to a third party, even if the written assignment makes no mention of the oral agreement. CAC thus concludes that the district court erred in holding that, if it existed, the purported oral "final control" agreement between Hurst and Barton did not survive the written assignment to Barton, which contained no reservation of rights in Hurst to control licensing.
 
 
 9
 We need not reach the novel question of patent law that CAC presents, however. Assuming arguendo that an oral agreement allowing a single joint owner to grant an exclusive license is valid under 35 USC Secs. 261 and 262, and assuming further that such an oral agreement existed in this case and survived the assignment to Barton on July 1, 1979, we hold that by the time of the August 5, 1983 meeting between Hurst and the SBM representatives, that agreement had been terminated. The district court specifically found that "before Hurst began his negotiations with SBM to renew SBM's exclusive license, Barton told Hurst that he was buying a balloon-making machine for his own manufacture of balloons." Although the record contains conflicting testimony on this point, CAC has not persuaded us that the district court's fact finding was clearly erroneous. We hold that Barton's statement to Hurst effected at least a constructive, if not an express, termination of any alleged "final control" agreement.[3] Hurst was no neophyte when it came to dealing with patent rights. It is not unreasonable to conclude that Hurst knew or should have known that Barton's investment in his own balloon-making machine would have been to no purpose if SMB had an exclusive license, and that under such circumstances Hurst would be without authority to reinstate the exclusive license to SMB without Barton's express consent.
 
 
 10
 We have also considered the "admissions" issue raised by CAC, but find it devoid of any merit. CAC's strained argument that through their pleadings Container Technologies, Inc. (CTI) and Barton admitted "[b]y implication" that the alleged "final control" agreement was still in effect as of August 5, 1983 is directly contrary to the district court's fact finding discussed above, as well as paragraph 29 of CTI's amended counterclaim and Cross-Claim. The district court did not err in ignoring the "admissions" issue.
 
 
 
 [1]
 Although 35 USC 262 speaks in terms of a joint owner's right to "make, use or sell" the patented invention himself, it does not specifically address the joint owner's right to grant licenses to third parties. Accordingly, a leading commentator remarked that
 [s]ection 262 is but a partial statement of the rights of joint owners of a patent as found in the case law. It would have been more useful and effective if it were more complete, in particular as to the rights of joint owners with respect to the granting of licenses and the disposition of their interests.
 P.J. Federico, Commentary on the New Patent Act 51 (West 1954).
 
 
 [2]
 We find Rail-Trailer inapposite. There the court merely held that one joint owner could grant an exclusive license to another joint owner, thereby barring himself from making the patented invention, without running afoul of the Sherman Act or the common law prohibition against unreasonable restraints of trade. The joint owner/licensor gave up no more than the rights he himself previously possessed. No third-party non-owners were involved, and the agreement between the joint owners (i.e., the license agreement itself) was written, not oral
 
 
 [3]
 In light of the district court's finding that the oral "final control" agreement, if any existed, contained no element of duration, we conclude that the agreement was terminable at will by Barton. Under Texas law, contracts which contemplate continuing performance (or successive performances) and which are indefinite in duration can be terminated at the will of either party. Clear Lake City Water Authority v. Clear Lake Utilities Co., 549 S.W.2d 385 (Tex.1977). To the extent that the alleged "final control" agreement established a relationship between Hurst and Barton akin to an agency, see also Restatement (Second) of Agency Sec. 119 (1958) ("Authority created in any manner terminates when either party in any manner manifests to the other dissent to its continuance or, unless otherwise agreed, when the other has notice of dissent.")